116 F.3d 976
 155 L.R.R.M. (BNA) 2577
 AMERICAN FEDERATION OF GRAIN MILLERS, AFL-CIO and Its Local
Union Nos. 1, 4, 16, 36, 37, 55, 85,88, 118, 122, and 226,
Theodore David, Robert Holub, Dean D. Vail, Bernell B.
Osterman, Russell D. Adams, Lewis E. Bertollini, Edward B.
Kohout, Kenneth J. Mulhisen, James J. Wiskerchen, Joseph B.
Devich, Harold Fortwengler, Peter J. Hanson, John F. Hedden,
Lawrence Groves, Edward Adamczyk, Plaintiffs-Appellants,
v.
INTERNATIONAL MULTIFOODS CORPORATION, The Term Life,
Accidental Death and Dismemberment, Accident and Sickness
Insurance and Health Care Coverages for Hourly Employees
Covered by the Master Agreement Between International
Multifoods Corporation and The American Federation of Grain
Millers AFL-CIO ("The Plan"), Defendants-Appellees.
 No. 1096, Docket 96-7948.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 26, 1997.
Decided June 23, 1997.
 
 Richard Helfand, Kansas City, MO (Panethiere & Helfand, Kansas City, MO, William E. Grande, Kenmore, NY, of counsel), for Plaintiffs-Appellants.
 Daniel C. Gerhan, Minneapolis, MN (Paul W. Heiring, Faegre & Benson, Minneapolis, MN, H. Kenneth Schroeder, Jr., Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, NY, of counsel), for Defendants-Appellees.
 Before: VAN GRAAFEILAND, MESKILL and CABRANES, Circuit Judges.
 MESKILL, Circuit Judge:
 
 
 1
 For many years, the International Multifoods Corp. (Multifoods) paid the entire premium required to provide medical insurance to its retirees. However, in 1992 Multifoods announced that in the future, if premiums increased at a rate faster than an inflationary measure selected by Multifoods, the retirees would have to pay the difference to maintain medical insurance.
 
 
 2
 The American Federation of Grain Millers (AFGM), several of AFGM's local unions and fifteen named retirees[1] sued Multifoods under the Labor-Management Relations Act (LMRA) § 301, 29 U.S.C. § 185, alleging that collective bargaining agreements (CBAs) between Multifoods and the unions prevented Multifoods from making the change. Although the CBAs all had expired, plaintiffs alleged that Multifoods promised vested retirement benefits in the CBAs. Plaintiffs also sued under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. *978s 1132, alleging that Multifoods promised vested retirement benefits in Multifoods' ERISA plan documents.
 
 
 3
 In the alternative, plaintiffs argued that Multifoods amended its ERISA plan in an improper manner, arguing (1) that it was improper for Multifoods to fail to disclose in its ERISA summary plan description that it reserved the right to amend the plan, (2) that Multifoods failed to follow required procedures for amending the plan, and (3) that after Multifoods amended the plan, Multifoods did not provide the retirees with proper notice that the plan had been amended.
 
 
 4
 The United States District Court for the Western District of New York, Elfvin, J., concluded that plaintiffs did not make the necessary showing of a promise of vested health care benefits to the retirees in either the CBAs or the ERISA plan documents, or that Multifoods improperly amended its ERISA plan. The district court therefore granted summary judgment to Multifoods. We affirm.
 
 BACKGROUND
 
 5
 Multifoods and AFGM entered a "Master" collective bargaining agreement which covered most of AFGM's locals, and Multifoods also entered into individual CBAs with a few of AFGM's local unions that were not covered by the "Master" agreement. AFGM and its various locals will be referred to collectively, hereafter, as "unions." Each CBA expressly required Multifoods to provide its retirees with medical insurance at no cost to the retirees, and Multifoods provided such coverage while the CBAs were in effect.
 
 
 6
 By providing medical insurance to its retirees, Multifoods was operating an "employee welfare benefit plan" under ERISA. See 29 U.S.C. § 1002(1). As was required by ERISA, Multifoods maintained a detailed plan description, see id. § 1022(a)(2), and provided the retirees with a summary of the plan, called a "summary plan description" (SPD), see id. § 1022(a)(1).
 
 
 7
 When all of the CBAs expired, Multifoods did not amend its ERISA plan and continued to pay the entire premium required to provide medical insurance to its retirees. However, in 1992 Multifoods amended its ERISA plan, fixing the premium that it would pay for the coverage at the amount it was currently paying, plus an annual increase of either four percent or the percentage increase in the U.S. Medical Consumer Price Index, whichever was lower. Therefore, if premiums increased at a rate faster than the lower of the two percentages, the amended plan required the retirees to pay the difference in order to maintain medical insurance.
 
 
 8
 Plaintiffs sued under LMRA § 301, 29 U.S.C. § 185, alleging that the CBAs between Multifoods and the unions prevented Multifoods from making the change.[2] Although the CBAs had all expired, plaintiffs alleged that, nevertheless, Multifoods promised in the CBAs that it would provide the retirees with medical insurance at no cost to them for their lifetimes. Plaintiffs also sued under ERISA § 502, 29 U.S.C. § 1132, alleging that Multifoods' ERISA plan documents contained promises to provide the retirees with medical insurance at no cost to them for their lifetimes.
 
 
 9
 In the alternative, plaintiffs argued that Multifoods amended its ERISA plan improperly by (1) failing to disclose in the SPD that it reserved the right to amend the plan, (2) failing to follow required procedures for amending the plan, and (3) failing to provide them with proper notice that the plan had been amended.
 
 
 10
 Multifoods moved for summary judgment, arguing that none of the documents relied on by plaintiffs contained a promise to provide the retirees with vested benefits and that it amended the plan in a proper manner. The district court agreed, and granted Multifoods summary judgment. For the reasons discussed below, we affirm.
 
 DISCUSSION
 
 11
 We review de novo a district court's grant of summary judgment. Hanson v. McCaw Cellular Communications, 77 F.3d 663, 667 (2d Cir.1996). "Summary judgment is proper only if, viewing all evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact," id. (quotation omitted), and the moving party is entitled to judgment as a matter of law.
 
 
 12
 I. Vesting Under the CBAs and ERISA Plan Documents
 
 
 13
 Plaintiffs argue that the CBAs and the ERISA plan documents contain promises from Multifoods to provide medical insurance to its retirees at no cost to them for their lifetimes. We disagree.
 
 A. Vesting of Retiree Medical Benefits
 
 14
 ERISA contemplates two distinct types of employee benefit plans--pension plans and welfare plans. See 29 U.S.C. § 1002(1) & (2)(A). Because Multifoods' plan provides medical benefits, it is a welfare plan. See id. § 1002(1).
 
 
 15
 Unlike pension plan benefits, the benefits provided by a welfare plan generally are not vested and an employer can amend or terminate a welfare plan at any time. Inter-Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry. Co., --- U.S. ----, ----, 117 S.Ct. 1513, 1516, 137 L.Ed.2d 763 (1997); Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78, 115 S.Ct. 1223, 1228, 131 L.Ed.2d 94 (1995); Schonholz v. Long Island Jewish Med. Ctr., 87 F.3d 72, 77 (2d Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 511, 136 L.Ed.2d 401 (1996); Bidlack v. Wheelabrator Corp., 993 F.2d 603, 604-05 (7th Cir.1993) (in banc). We have explained the reason for this rule as follows:
 
 
 16
 With regard to an employer's right to change medical plans, Congress evidenced its recognition of the need for flexibility in rejecting the automatic vesting of welfare plans. Automatic vesting was rejected because the costs of such plans are subject to fluctuating and unpredictable variables. Actuarial decisions concerning fixed annuities are based on fairly stable data, and vesting is appropriate. In contrast, medical insurance must take account of inflation, changes in medical practice and technology, and increases in the costs of treatment independent of inflation. These unstable variables prevent accurate predictions of future needs and costs.
 
 
 17
 Moore v. Metropolitan Life Ins. Co., 856 F.2d 488, 492 (2d Cir.1988).
 
 
 18
 The rule is the same for plans that provide welfare benefits to retirees--retiree welfare benefits are generally not vested, and an employer can amend or terminate a plan providing such benefits at any time. See Curtiss-Wright, 514 U.S. at 75, 78, 115 S.Ct. at 1226-27, 1228 (discussing a retirement welfare plan, and stating: "ERISA does not create any substantive entitlement to employer-provided health benefits or any other kind of welfare benefits. Employers ... are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans. Nor does ERISA establish any minimum ... vesting ... requirements for welfare plans.... Accordingly, that [defendant] amended its plan to deprive [plaintiffs] of health benefits is not a cognizable complaint under ERISA." (citations omitted)); Schonholz, 87 F.3d at 77 (discussing a severance plan which provided ERISA welfare benefits, and stating: "Under ERISA it is the general rule that an employee welfare benefit plan is not vested and that an employer has the right to terminate or unilaterally to amend the plan at any time."); Moore, 856 F.2d at 491 (discussing a retirement welfare plan, and stating: "Automatic vesting does not occur in the case of welfare plans."). But see UAW v. Yard-Man, Inc., 716 F.2d 1476, 1482 (6th Cir.1983) ("[R]etiree benefits are in a sense 'status' benefits which, as such, carry with them an inference that they continue so long as the prerequisite status [i.e., as a retiree] is maintained.").
 
 
 19
 The rule under section 301 is similar--after a CBA expires, an employer generally is free to modify or terminate any retiree medical benefits that the employer provided pursuant to that CBA. See Litton Fin. Printing Div., a Div. of Litton Bus. Sys. v. NLRB, 501 U.S. 190, 207, 111 S.Ct. 2215, 2225-26, 115 L.Ed.2d 177 (1991) ("As with the obligation to make pension contributions ..., other contractual obligations will cease, in the ordinary course, upon termination of the [collective] bargaining agreement."); LTV Steel Co. v. UMW (In re Chateaugay Corp.), 945 F.2d 1205, 1208-09 (2d Cir.1991) (holding that the obligation of an employer to pay retiree health benefits ended when a collective bargaining agreement which provided those benefits expired); Century Brass Prods. v. UAW (In re Century Brass Products), 795 F.2d 265, 269 n. 2 (2d Cir.1986) ("Whether retirees' insurance benefits extended beyond the term of a collective bargaining agreement is determined by reference to the terms of the contract and the parties' intent."); Bidlack, 993 F.2d at 606 ("ordinarily when a contract expires, it--expires. It is at an end" and therefore "a court should cast a cold eye on contentions that a contract with a fixed term actually created a perpetual obligation").
 
 
 20
 However, under both section 301 and ERISA, if an employer promises vested benefits, that promise will be enforced. See LMRA § 301(a), 29 U.S.C. § 185(a) (federal courts can hear "[s]uits for violation of contracts between an employer and a labor organization"); 29 U.S.C. § 1132(a)(1)(B) (ERISA plan beneficiaries can sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan"); Schonholz, 87 F.3d at 77. However, the circuits disagree as to exactly what language is required to create a promise to vest retiree medical benefits.
 
 
 21
 All courts agree that if a document unambiguously indicates whether retiree medical benefits are vested, the unambiguous language should be enforced. See, e.g., Schonholz, 87 F.3d at 78 (2d Cir.); Bidlack, 993 F.2d at 607-09 (7th Cir.); Yard-Man, 716 F.2d at 1479 (6th Cir.).
 
 
 22
 However, when the documents are ambiguous as to whether retiree medical benefits are vested, the circuits disagree as to how the documents should be interpreted. Compare Yard-Man, 716 F.2d at 1482 (6th Cir.) ("[W]hen the parties contract for benefits which accrue upon achievement of retiree status, there is an inference that the parties likely intended those benefits to continue as long as the beneficiary remains a retiree."), with Bidlack, 993 F.2d at 608-09 (7th Cir.) (if a CBA is silent as to whether retiree benefits are vested, the benefits are not vested; however, if the document is ambiguous on the issue, a jury should determine whether vested benefits were promised), with In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig., 58 F.3d 896, 902 (3d Cir.1995) ("Extra-ERISA commitments, such as the right to receive free lifetime coverage, must be found in the plan documents and stated in clear and express language." (emphasis added)); Gable v. Sweetheart Cup Co., 35 F.3d 851, 855 (4th Cir.1994) (same); Chiles v. Ceridian Corp., 95 F.3d 1505, 1515 (10th Cir.1996) (same); Wise v. El Paso Natural Gas Co., 986 F.2d 929, 937 (5th Cir.1993) (same).
 
 
 23
 In this Circuit, to reach a trier of fact, an employee does not have to "point to unambiguous language to support [a] claim. It is enough [to] point to written language capable of reasonably being interpreted as creating a promise on the part of [the employer] to vest [the recipient's] ... benefits." Schonholz, 87 F.3d at 78 (2d Cir.) (emphasis added and citation omitted); cf. Bidlack, 993 F.2d at 608-09 (7th Cir.).[3] We will examine the CBAs and the ERISA plan documents in light of this standard.
 
 B. The CBAs
 
 24
 Plaintiffs contend that the CBAs could reasonably be interpreted as promising medical insurance to the retirees at no cost to them for their lifetimes.
 
 
 25
 The Master CBA between Multifoods and AFGM controls the claims of a majority of Multifoods' retirees, and it states, in pertinent part:
 
 
 26
 An amended schedule of [medical] insurance coverage for all regular Employees covered by this Agreement has been established, which is to be provided without Employee or retiree contributions. During the term of this Agreement there shall be no reduction in the schedule of benefits.
 
 
 27
 (emphasis added). Multifoods entered into separate CBAs with Locals 4 and 226, and those agreements, to the extent they are relevant here, are identical in substance.[4] As mentioned above, all of these CBAs expired before the plaintiffs challenged the plan changes.
 
 
 28
 Each CBA states that retiree medical benefits could not be reduced "[d]uring the term of this Agreement." Promising to provide benefits for a certain period of time necessarily establishes that once that time period expires, the promise does as well. See In re Chateaugay, 945 F.2d at 1208 (holding that a CBA provision which "guaranteed" retiree medical benefits "during the term of this Agreement" established that retiree "health benefits were no longer guaranteed" once the agreement expired). Therefore, we conclude that this provision unambiguously establishes that once the CBAs expired, Multifoods was free to reduce retiree medical benefits.
 
 
 29
 Plaintiffs argue that the "during the term of this Agreement" language modifies only the "schedule of benefits" language, and does not modify the language from the preceding sentence that retiree medical insurance would be provided "without ... retiree contributions." Plaintiffs therefore take the position that after the CBAs expired, Multifoods was free to reduce or even eliminate the retirees' medical insurance benefits, but that if Multifoods offered any retiree medical insurance, the retirees could not be required to pay part of the premiums to receive that insurance. We reject plaintiffs' argument. Because the CBAs do not require Multifoods to provide the retirees with any medical benefits once the CBAs have expired, any benefits provided are purely gratuitous. It is well established that the beneficiary of a gift, if accepted, cannot object to the form of the gift.
 
 
 30
 Plaintiffs also attempt to rely on extrinsic evidence, pointing out that for a time after the CBAs expired, Multifoods continued to pay the entire premium required to provide medical insurance to its retirees. Plaintiffs contend that this indicates that Multifoods promised vested benefits to its retirees. See Bower v. Bunker Hill Co., 725 F.2d 1221, 1225 (9th Cir.1984) (holding that if an employer provides benefits to its retirees while a CBA is not in effect, that fact constitutes extrinsic evidence that the retiree benefits promised in that CBA are vested). However, while extrinsic evidence can be used to interpret ambiguous CBAs, see UMW v. LTV Steel Co. (In re Chateaugay Corp.), 891 F.2d 1034, 1038 (2d Cir.1989), extrinsic evidence cannot alter the meaning of unambiguous terms, see Vulcan Arbor Hill Corp. v. Reich, 81 F.3d 1110, 1117 (D.C.Cir.1996). Here, the terms of the CBA unambiguously establish that Multifoods had no obligation to provide medical insurance to its retirees after the CBAs expired, and therefore, plaintiffs' extrinsic evidence cannot change the result.
 
 
 31
 Moreover, even were we to consider plaintiffs' extrinsic evidence, the evidence does not aid plaintiffs. Multifoods provided medical benefits to all of its retirees, including non-union retirees who were never covered by a CBA. Therefore, continuing medical benefits to all retirees after the CBAs expired hardly indicates that Multifoods believed the CBAs required it to provide those benefits. See Anderson v. Alpha Portland Indus., 836 F.2d 1512, 1518 n. 3 (8th Cir.1988) (rejecting argument that employer viewed retiree benefits as vested after employer provided those benefits during a strike, because the employer also continued to provide medical benefits to striking employees, and those benefits clearly were not vested).
 
 
 32
 Finally, Multifoods also entered into separate CBAs with Locals 36 and 118. Those agreements state that Multifoods would provide medical insurance to the retirees covered by those agreements and that the ERISA SPD supplied the terms of that coverage. Therefore, the section 301 claims of Locals 36 and 118 will succeed or fail based on the language of the SPD. In our discussion below, we conclude that the SPD does not provide vested retiree benefits, and therefore, the section 301 claims of Locals 36 and 118 fail as well.
 
 
 33
 In summary, because the CBAs unambiguously indicate that retiree medical benefits were not vested, we affirm the district court's order dismissing plaintiffs' section 301 claims.
 
 C. The ERISA Plan Documents
 
 34
 Plaintiffs also contend that the ERISA plan documents could reasonably be interpreted as promising medical insurance to the retirees at no cost to them for their lifetimes.
 
 
 35
 The ERISA plan explicitly provided that it could "be amended at any time, without consent of the insured Employees or any other person having a beneficial interest in it." Multifoods contends that this language unambiguously establishes that the plan could be amended at any time, and that therefore, the plan did not provide the retirees with vested benefits. Plaintiffs do not disagree, and therefore, we conclude that the ERISA plan did not promise vested retiree benefits.
 
 
 36
 Plaintiffs contend, however, that Multifoods promised vested retiree benefits in the SPD. As to the legal effect of a SPD, we have stated:
 
 
 37
 It is of no effect to publish and distribute a[SPD] designed to simplify and explain a voluminous and complicated document, and then proclaim that any inconsistencies will be governed by the plan. Unfairness will flow to the employee for reasonably relying on the summary booklet. We conclude that ... where ... the terms of a plan and those of a[SPD] conflict, it is the [SPD] that controls.
 
 
 38
 Heidgerd v. Olin Corp., 906 F.2d 903, 908 (2d Cir.1990) (quotation, citation and internal alteration omitted). Therefore, if the SPD promised vested medical benefits to the retirees, the SPD would control.
 
 
 39
 Plaintiffs contend that the SPD could reasonably be interpreted as promising vested retiree benefits because under the heading "NO COST TO YOU" the SPD states that "[t]he entire cost of the coverage is paid by Multifoods." Further, later in the document, the SPD states "PLAN COSTS--Paid by Employer." However, these statements simply indicate who would pay the costs of the plan at the time the SPD was published; these statements in no way indicate that Multifoods would continue to pay the cost of the plan for the retirees' lifetimes. A promise to pay present costs is obviously quite different than a promise to pay costs indefinitely. Therefore, we conclude that these statements could not reasonably be interpreted as promising vested benefits, and as plaintiffs have not called our attention to any other portions of the SPD that could reasonably be interpreted as promising vested benefits, we conclude that the SPD did not promise vested benefits.
 
 
 40
 Although our conclusion that the SPD could not reasonably be interpreted as promising vested benefits is sufficient to dispose of plaintiffs' argument, we note that the SPD also expressly reserved Multifoods' right to "terminate" the plan. We have held that if an employer has not promised vested benefits in a SPD, and the employer expressly reserves the right to terminate the plan in the SPD, benefits promised in the SPD are not vested. See Moore, 856 F.2d at 491-93 (retiree medical benefits are not vested because the SPD reserved to the employer the right to amend or terminate the plan).
 
 
 41
 We note, however, that we are not faced with the question of how a document should be interpreted when it includes a general statement that all the benefits provided under the plan could be amended or terminated but also includes specific terms which could reasonably be interpreted as promising vested retiree benefits. Several courts have concluded that a general reservation of the right to amend or terminate a plan supersedes specific language promising vested benefits. See, e.g., In re Unisys Corp., 58 F.3d at 903-04 & n. 11 (3d Cir.) (holding that, where plan documents included "broad and unequivocal" reservation of right to amend or terminate plan, "the fact that the ... plans used terms such as 'lifetime' or 'for life' to describe the duration of retiree medical benefits ... did not render the plans 'internally inconsistent' and therefore ambiguous here. An employer who promises lifetime medical benefits, while at the same time reserving the right to amend the plan ..., has informed plan participants of the time period during which they will be eligible to receive benefits provided the plan continues to exist." (footnote omitted)). However, other courts have indicated that this interpretation is questionable. See, e.g., Diehl v. Twin Disc, Inc., 102 F.3d 301, 307 (7th Cir.1996) (discussing In re Unisys, and stating: "a layperson untrained in the nuances of the law might greet this [case] with a quizzical expression"); cf. Restatement (Second) of Contracts § 203(c) (1981) ("specific terms and exact terms are given greater weight than general language"). Because the SPD here could not reasonably be interpreted as promising vested benefits, we do not need to decide whether a specific promise of vested benefits can be defeated by a general reservation of the right to amend or terminate a plan.
 
 II. Modifying an ERISA Plan
 
 42
 Plaintiffs in the alternative challenge the manner in which Multifoods amended its ERISA plan on three grounds: (1) that Multifoods was required to disclose in the SPD that Multifoods reserved the right to amend the plan, (2) that Multifoods did not follow proper procedures when it amended the plan, and (3) that after Multifoods amended the plan, Multifoods did not provide them with sufficient notice that the plan had been amended. We reject each argument below.
 
 
 43
 A. Disclosure of Amendment Rights in the SPD
 
 
 44
 Plaintiffs argue that Multifoods was required to disclose in the SPD that Multifoods reserved the right to amend the plan. Under ERISA, a SPD must be "sufficiently accurate and comprehensive to reasonably apprise ... participants ... of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1). Further, a SPD must also state the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b). Plaintiffs contend that because Multifoods did not disclose in the SPD that Multifoods reserved the right to amend the plan, the SPD was not "sufficiently accurate and comprehensive to reasonably apprise ... participants ... of their rights and obligations under the plan," 29 U.S.C. § 1022(a)(1), and that the SPD did not state the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits," 29 U.S.C. § 1022(b).
 
 
 45
 However, the SPD specifically stated that Multifoods reserved the right to terminate the plan. That disclosure was sufficient to alert participants that Multifoods also had the lesser right to amend the plan. Therefore, we conclude that the SPD sufficiently disclosed that the plan could be amended.
 
 
 46
 Because Multifoods disclosed in the SPD that it reserved the right to terminate (and therefore amend) the plan, we do not decide whether the ERISA sections cited above require an employer to disclose in a SPD that a welfare plan can be amended or terminated. The Fourth Circuit has, however, decided that a SPD need not disclose that a welfare plan could be amended or terminated. See Gable, 35 F.3d at 858 (holding that an employer is not required to disclose in a SPD that the plan can be amended or terminated, because "[a]n SPD is designed to inform plan participants of the terms of the particular plan that the employer has established, not to educate them regarding all aspects of ERISA law applicable to employee benefit plans in general").
 
 B. Plan Amendment Procedures
 
 47
 Plaintiffs also argue that Multifoods did not follow proper procedures when it amended the plan. ERISA requires that "[e]very employee benefit plan shall ... provide a procedure for amending such plan." 29 U.S.C. § 1102(b)(3). The Supreme Court has made it clear that this requirement is not onerous:
 
 
 48
 [T]he literal terms of [29 U.S.C. § 1102(b)(3) ] are ultimately indifferent to the level of detail in an amendment procedure.... The provision requires only that there be an amendment procedure.... A "procedure," as that term is commonly understood, is a "particular way" of doing something, Webster's Third New International Dictionary 1807 (1976), or "a manner of proceeding," The Random House Dictionary of the English Language 1542 (2d ed.1987). Certainly a plan that says it may be amended only by a unilateral company decision adequately sets forth "a particular way" of making an amendment.
 
 
 49
 Curtiss-Wright, 514 U.S. at 80, 115 S.Ct. at 1229; see also id. at 85, 115 S.Ct. at 1231 (as to plan amendment procedures, ERISA "dictat[es] only that whatever level of specificity a company ultimately chooses, ... it is bound to that level").
 
 
 50
 Here, the plan stated that it could be amended by a written agreement between Multifoods and its insurance company (The Prudential Insurance Company of America). Because Multifoods has established that it complied with that procedure when it amended the plan, we reject plaintiffs' argument.
 
 C. Notice of the Amendment
 
 51
 Finally, plaintiffs argue that after Multifoods amended the plan, Multifoods did not provide them with sufficient notice that the plan had been amended. ERISA states that "[a] summary of any material modification in the terms of the plan ... shall be furnished in accordance with section 1024(b)(1) of this title." 29 U.S.C. § 1022(a)(1). Section 1024(b)(1) requires that the summary of the material modification be furnished "not later than 210 days after the end of the plan year in which the change is adopted." 29 U.S.C. § 1024(b)(1). Here, the amendment was adopted in November 1992, and a notice of the amendment was sent to the retirees that same month--well within the time frame allowed by section 1024(b)(1). Accordingly, we reject plaintiffs' argument.
 
 III. Promissory Estoppel
 
 52
 Finally, plaintiffs argue that the ERISA plan documents granted them vested medical benefits on promissory estoppel grounds. We have held that promissory estoppel "can apply in ERISA cases under extraordinary circumstances." Schonholz, 87 F.3d at 78. However, to invoke promissory estoppel, it is elemental that employees must establish that their employer made them a promise. See id. at 79. Because plaintiffs made no showing in the district court that Multifoods promised vested medical benefits, we reject plaintiffs' promissory estoppel argument.
 
 CONCLUSION
 
 53
 The district court's order granting summary judgment to Multifoods is affirmed.
 
 
 
 [1]
 Although plaintiffs' complaint was nominally brought as a class action, class certification was not requested or granted
 
 
 [2]
 It is unclear whether a "[u]nion has standing under [a] CBA to assert the rights of individual retirees in a dispute with a former employer." Schweizer Aircraft Corp. v. Local 1752, UAW, 29 F.3d 83, 87 (2d Cir.1994) (reserving issue). Here, because the retirees are parties to this action, we need not decide whether the unions have standing
 
 
 [3]
 When documents are ambiguous, other circuits have disagreed as to whether at trial, there should be a presumption that retiree benefits are vested or that retiree benefits are not vested. Compare Yard-Man, 716 F.2d at 1482 (6th Cir.) (apparently presuming that retiree benefits are vested), with Bidlack, 993 F.2d at 608-09 (7th Cir.) (apparently presuming that retiree benefits are not vested). Because we conclude below that there is no need for a trial as the documents at issue in this case could not reasonably be interpreted as promising vested retiree benefits, we need not decide what presumption, if any, would be appropriate at trial
 
 
 [4]
 The CBA between Multifoods and Local 4 states, in pertinent part:
 A schedule of [medical insurance] coverage for all regular employees covered by this Agreement was ... established, which did not require employee or retiree contributions.... During the term of this Agreement there shall be no reduction in the schedule of benefits specified therein.
 The CBA between Multifoods and Local 226 states, in pertinent part:
 A schedule of [medical] insurance coverage for all regular employees covered by this Agreement has been established, which is to be provided without employee or retiree contributions.... During the terms of this Agreement there shall be no reduction in the schedule of benefits.