## In re RAYTECH CORPORATION, Raymark Corporation, Raymark Industries, Inc., Debtors.

### Raytech Corporation, Plaintiff,

and

### The Official Committee of Unsecured Creditors of Raytech Corporation, Plaintiff–Intervenor,

v.

### Pension Benefit Guaranty Corporation, Defendant.

Bankruptcy Nos. 89–00293, 98–51540, 98–51532.

Adversary No. 99–5051.

United States Bankruptcy Court, D. Connecticut, Bridgeport Division.

Dec. 6, 1999.

Kenneth Pasquale, Stroock & Stroock & Lavan, LLP, New York City, for Raytech Corporation.

Elizabeth Austin, Pullman & Comley, LLC, Bridgeport, CT, for Raytech Corporation.

Lois Bruckner Parks, Nancy Herrmans, Office of General Counsel, Pension Benefit Guarantee Corp., Washington, DC, for the Pension Benefit Guarantee Corp.

## MEMORANDUM AND ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

ALAN H.W. SHIFF, Chief Judge.

The plaintiff-debtor, Raytech Corporation ("Raytech"), and the defendant, the Pension Benefit Guarantee Corporation ("the PBGC"), have filed cross motions for summary judgment. This decision addresses the PBGC's motion as to count one of its counterclaim which alleges that Raytech is obligated to fund two pension plans.

### BACKGROUND

The procedural history of these jointly administered cases has been documented in several decisions, *e.g.*, *Schmoll v. ACandS, Inc.*, 703 F.Supp. 868, 870–71 (D.Or.1988), *aff'd.* 977 F.2d 499 (9th Cir. 1992) ("*Schmoll*"); *Raytech v. White*, 54 F.3d 187 (3rd Cir.1995), *cert. denied*, 516 U.S. 914, 116 S.Ct. 302, 133 L.Ed.2d 207 (1995) ("*White*"); and *Raytech v. Unsecured Creditors Committee*, 217 B.R. 679

(Bankr.D.Conn.1998) ("Remedies Action"),[1] familiarity with which is assumed. This decision will nonetheless recount some of that history to establish the factual basis for the instant motion.

In 1982, as part of a planned restructuring, Raybestos–Manhattan, Inc., a manufacturer and distributor of energy absorption and transmission products, including asbestos and asbestos-containing products, changed its name to Raymark Industries, Inc. ("Raymark"). Raybestos and then Raymark sponsored and maintained at least two pension plans, *i.e.*, the Raymark Industries, Inc. Retirement Plan for Hourly Employees and the Retirement Plan for Hourly Paid Employees of Raymark Industries, Marshville Plant (collectively, the "Plans"). The Plans are defined benefit pension plans subject to Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1301–1461 (1994 & Supp. III 1997). The Plans and/or the PBGC are present and/or future creditors of Raymark.

In June 1986, Raymark Corporation created Raytech as a wholly-owned subsidiary, which in turn created Raysub as its wholly-owned subsidiary. Through a series of transfers described in *Schmoll, supra,* Raytech acquired Raymark's profitable assets while leaving Raymark with enormous asbestos related personal injury, wrongful death and environmental liabilities. The Remedies Action held, *inter alia,* that Raytech's liability as a successor in interest for those debts was unlimited.

The PBGC contends that Raymark stopped making contributions to the Plans in April, 1998, and as a consequence, they are underfunded. *See Counterclaim* at 9, ¶ 16. On April 20, 1999, Raytech filed the instant adversary proceeding, seeking a declaratory judgment that the Raytech estate is not liable for Raymark's pension contributions under the Plans, which it estimates to be "in the range of $1.5 million to $3 million annually for each of the next five years." *Complaint* at ¶ 9. The PBGC filed a counterclaim seeking the opposite result, *i.e.,* that the preclusive effect of the Remedies Action requires Raytech, as a successor in interest, to fund the Plans.

## DISCUSSION

### *Summary Judgment*

Summary judgment is appropriate "if the [papers before the court] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c), made applicable to bankruptcy proceedings by Rule 7056, F.R.Bankr.P. A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *cited in Jackson v. Mann,* 196 F.3d 316, 319–20 (2nd Cir.1999). *See also, In re Roberti,* 183 B.R. 991, 998–99 (Bankr. D.Conn.1995) (citations omitted).

■ Raytech argues that there are disputed issues of material fact. It specifically contends that the PBGC is not entitled to summary judgment under a collateral estoppel application of the Remedies Action because that decision did not address the issue of whether Raytech was a good faith purchaser and whether it paid fair consideration for the Raymark assets that it acquired, but in fact the Remedies Action did consider and rule on those issues:

> Raytech takes the position that there are genuine issues of material fact that were not litigated and decided which would preclude summary judgment ... For example, Raytech claims that issues of whether it acted in good faith and

---

1. Raytech was a party in *Schmoll, White,* and the Remedies Action. The Official Committee of Unsecured Creditors of Raytech was an intervening party in *White* and a party in the Remedies Action.

paid fair consideration were not considered by *Schmoll* and *White*, and that the absence of those material issues in the prior litigation eliminates the applicability of collateral estoppel here. Raytech's argument overlooks the following statements:

Raytech told the district court in *Schmoll:*

The evidence will ... show that any and all assets purchased by Raytech were acquired in good faith and for a fair consideration, without any purpose or effect of defeating plaintiff's remedies against Raymark Industries ...

This Court has recognized that under Oregon law an asset purchaser may be held liable for the seller's misconduct if the purchaser fails to pay fair consideration for the assets....

In spite of those assertions, the court imposed successor liability without limitation....

Raytech's fraudulent conveyance or fair consideration argument was therefore specifically rejected by 'necessary implication'.

217 B.R. at 689–91. Raytech is therefore estopped from reasserting that argument, and no other claims of disputed material fact have been asserted.

### Connecticut Fraudulent Conveyance Law

■ Raytech and the PBGC agree that Connecticut law regarding fraudulent conveyances is applicable to the summary

judgment issue presented here, *i.e.*, whether, as a matter of law, Raytech is liable for missed and future contributions to the Plans.

The Connecticut law in effect at the time that an alleged fraudulent transfer took place is controlling. *Dietter v. Dietter,* 54 Conn.App. 481, 486, 737 A.2d 926 (1999) (citing *Farrell v. Farrell,* 36 Conn.App. 305, 312 n. 8, 650 A.2d 608 (1994)). Since the restructuring transfers took place before October 1, 1991, this case is controlled by Connecticut General Statutes § 52–552 which, for purposes relevant here,[2] follows the Uniform Fraudulent Transfer Act, Connecticut General Statutes § 52–552a, *et seq. See also Molitor v. Molitor,* 184 Conn. 530, 535, 440 A.2d 215 (1981) (the Connecticut Supreme Court noted the similarity of § 52–552 to UFTA).[3]

Connecticut fraudulent conveyance law provides a remedy of avoiding a transfer. In the bankruptcy context, §§ 544 and 551 provide for the avoidance of a transfer under "applicable" Connecticut law for the benefit of the bankruptcy estate. But the avoidance of a transfer is not the exclusive remedy; nor is it the remedy that the PBGC seeks in its counterclaim. Rather, the PBGC seeks equitable relief under UFTA; 28 U.S.C. § 2201(a); and Rule 7001, F.R.Bankr.P.[4]

The UFTA provides in relevant part:

**Remedies of creditors**

(a) In an action for relief against a transfer ... a creditor ... may obtain:

---

**2.** For example, the applicable statute of limitations differs between § 52–552 and UFTA, but the distinction is irrelevant. The pre-Act limitations period, governed by Connecticut General Statutes § 52–577, was three years, while under UFTA, it is four. But whichever limitations period is applied, it was tolled by Raytech's bankruptcy petition. *See* 11 U.S.C. § 108(c); *In re Martin–Trigona,* 763 F.2d 503, 506 (1985).

**3.** It is noted that Raytech and the PBGC cite to UFTA in their papers.

**4.** Title 28 U.S.C. § 2201(a) provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Rule 7001, F.R.Bankr.P., provides that an adversary proceeding may be brought, *inter alia,* "to obtain an injunction or other equitable relief" and "to obtain a declaratory judgment relating to any of the foregoing....".

... (3) ... (C) any other relief the circumstances may require.

Connecticut General Statutes § 52–552h.

Raytech argues that notwithstanding that there may be alternative remedies under UFTA, the PBGC's counterclaim is an attempt to avoid a fraudulent transfer of Raymark's assets under § 544(b) and as to that relief, it lacks standing[5] because that action may only be bought by the Raymark trustee.[6] The argument is unavailing. This court is persuaded by the PBGC's response that it does not seek to avoid a transfer for the benefit of Raytech's creditors but rather a declaratory judgment that Raytech is liable for contributions to the Plans. *See, e.g., Securities Investor Protection Corporation v. Stratton Oakmont Inc.,* 234 B.R. 293, 320, (Bankr.S.D.N.Y.1999) (recognizing the distinction between transfer avoidance and obligations that arise from successor liability).

### Successor Liability for Maintenance of Plans

The Remedies Action determined that the restructuring scheme was permeated with actual fraudulent intent:

> The *Schmoll* court ... concluded that ... the corporate restructuring ... was designed with the improper purpose of escaping asbestos-related liabilities.

217 B.R. at 687 (citing *Schmoll,* 703 F.Supp. at 874).

> Even though the court in *Schmoll* omitted the word 'fraudulent' in the course of its successor liability analysis, the indicia of improper purpose upon which the

*Schmoll* court largely relied are the same factors that Raytech itself acknowledges are generally considered by courts when determining whether a transfer of corporate assets was undertaken for the fraudulent purpose of escaping liability.

*Id.,* at 687 n. 12 (citing *White,* 54 F.3d 187, 192–93).

The *White* court concluded that ... the transaction was 'rife with improper intent.' *Id.* at 689 (citing *White,* 54 F.3d at 195).

■ The issue then is whether the actual fraud found in the Remedies Action and recounted here warrants the conclusion that Raytech is required to fund the Plans as a matter of law. It does. Under UFTA a transfer which is fraudulent as to one creditor is deemed fraudulent as to all creditors, present and future. *See Molitor, supra,* 184 Conn. at 535, 440 A.2d 215 ("a conveyance may be declared judicially void and set aside as against any person.").

■ There is no reason to treat Raymark's pensioners differently from any of its other creditors or potential creditors, including those who have been caused an asbestos-related injury.[7] That result reflects the general purpose of fraudulent transfer law, which is to "to prevent [a] debtor from taking deliberate action to hinder, delay, or defraud his creditors" by providing a remedy to creditors and potential creditors to undo the detrimental effects of a fraudulent transfer. *See generally,* BASIL H. MATTINGLY, THE INTERACTION OF AVOIDANCE POWERS ..., 50 S.C.L.Rev. 363, 367 (1999).

---

**5.** Standing is limited to parties in interest. *Licensing by Paolo, Inc. v. Sinatra (In re Gucci),* 126 F.3d 380, 388 (2nd Cir.1997).

**6.** Title 11 U.S.C. § 544(b)(1) provides that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law...." Other creditors, including creditors' committees, have no independent standing under the Bankruptcy Code to avoid fraudulent transfers, but rather may do so "only when the trustee or debtor-

in-possession unjustifiably failed to bring suit or abused its discretion in not suing." *Unsecured Creditors Committee v. Noyes (In re STN Enterprises),* 779 F.2d 901, 904 (2nd Cir. 1985). For purposes of the instant motion, the PBGC does not attempt to meet the *STN* standard and concedes that does not meet that standard.

**7.** Raytech does not reassert due process arguments that it presented in the Remedies Action litigation. *See* 217 B.R. at 693 n. 17.

Moreover, it is clear that Raytech anticipated the impact of the successor liability determination on its potential pension obligations. Raytech's 1993 Annual Report included the following language:

[m]anagement believes that the restructuring plan, including the acquisitions of businesses from Raymark and the Raymark divestiture, created for the purpose to legally separate Raytech and its acquired businesses from Raymark's asbestos-related and other liabilities, will be upheld in the court proceedings.... However, the outcome of these matters is uncertain and should Raytech receive an adverse ruling in bankruptcy under the doctrines of successor liability, piercing the corporate veil or fraudulent conveyance, there would be a material adverse impact on Raytech as it does not have the resources needed to fund Raymark's substantial uninsured asbestos-related liabilities, environmental and *pension liabilities* and related costs of litigation.

*July 30, 1999 Stipulation* at ¶ 10 (emphasis added).[8]

Accordingly, it is concluded that injunctive and declaratory relief is warranted and that Raytech must fund the Plans.

### ORDER

The PBGC's motion for summary judgment as to count one of its counterclaim is GRANTED, and it is SO ORDERED; and JUDGMENT shall enter in favor of the PBGC as that count.

---

8. Parenthetically, it is observed that Raymark also contemplated that scenario in its May 3, 1999 objection to the PBGC's proofs of claim: "Trustee further objects ... [insofar as the] PBGC has failed to pursue recoveries against other parties who are or may be primarily liable for said claims." *Objection* at 7, ¶ F.