In re RAYTECH CORPORATION,
Raymark Corporation, Raymark
Industries, Inc., Debtors.

Creditors' Committee of
Retirees, Plaintiff,

v.

Raytech Corporation and Laureen M.
Ryan, in her capacity as Trustee of
Raymark Corporation and Raymark
Industries, Inc., Defendants.

Official Committee of Unsecured Credi-
tors of Raytech Corporation, Inter-
venor Defendant.

Bankruptcy Nos. 89–00293,
98–51540, 98–51532.
Adversary No. 99–5039.

United States Bankruptcy Court,
D. Connecticut.

Dec. 21, 1999.

Roberta Napolitano, Weinstein, Weiner, Ignal, Napolitano & Shapiro, P.C., Bridgeport, Connecticut, for the Creditors' Committee of Retirees.

James C. Graham, Pepe & Hazard, Hartford, Connecticut, for the Raymark Trustee.

Peter Lockwood, Caplin & Drysdale, Chartered, Washington, D.C., for the Committee of Unsecured Creditors.

Kenneth Pasquale, Stroock & Stroock & Lavan LLP, New York City, Elizabeth Austin, Pullman & Comley, LLC, Bridgeport, Connecticut, for Raytech Corporation.

## MEMORANDUM AND ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

ALAN H. W. SHIFF, Chief Judge.

The Creditors Committee of Retirees ("Retiree Committee") commenced this adversary proceeding on March 29, 1999 seeking a determination that the Raymark Trustee improperly terminated retiree welfare plans. Each side has moved for summary judgment. This decision addresses the defendants' motion.

The parties submitted a stipulation of facts which included exhibits of plans, plan documents, and letters to retirees. The attorney for the Retiree Committee has asserted that she would present no additional evidence beyond the current stipulated record if this matter went to trial. Both sides agree that there are no facts in dispute, but disagree as to the inferences that may be drawn from them.

Beginning as early as 1969, Raymark Industries, Inc. ("Raymark") implemented a series of health and welfare plans for the benefit of its current and retired employees. *October 13, 1999 Stipulation* at ¶¶ 15–21; *Exh.* 27. With the exception of certain summary plan descriptions, including those "pertaining to the Stratford Group Life Insurance Plan for 1978, 1979, and 1981, and those pertaining to the Dallas Life Insurance Plan for Hourly Employees for 1978," *Stipulation* at ¶ 26, the plan documents contained express language which reserved Raymark's right to modify and/or terminate employees' health and welfare benefits. On May 20, 1997 Raymark created a retiree trust for the benefit of individuals entitled to employee health and welfare benefits. *Id.* at ¶ 11. On January 1, 1998, Raymark established two health and welfare plans for retirees, one for pre-medicare and the other for supplemental medicare benefits. Each was captioned Plan Document and Summary Plan Description. *Exh. 17* and *18* ("1998 Plans"). The 1998 Plans purported

to supersede all prior plans, and each stated "Raymark Industries, Inc. Irrevocable Retiree Benefit Plans Trust fully intends to maintain this Plan indefinitely, however, it reserves the right to terminate, suspend, discontinue or amend the Plan at any time and for any reason." *Stipulation* at ¶ *22; Exh. 17* at 1, ¶ 3, and *Exh. 18* at 2, ¶ 3. Similar language reappears in *Exh. 17* at 29, ¶ 4, and in *Exh. 18* at 24, ¶ 2.

On March 18 and April 15, 1998, Raymark Industries, Inc. and Raymark Corporation filed bankruptcy petitions. *See In re Raytech Corp.*, 222 B.R. 19 (Bankr. D.Conn.1998). Laureen M. Ryan was appointed as the trustee for those entities on October 7, 1998, which were subsequently administratively consolidated. During the period from March 1998 through February 1999, benefits of approximately $150,000–180,000 per month were being paid to Raymark's retirees. On February 28, 1999, pursuant to the 1998 Plans, the Trustee suspended those benefits, and on March 12, she terminated them.

### Discussion

*Plans in effect on termination*

█ The defendants seek a determination that the termination of the 1998 Plans terminated any and all retiree health and welfare benefits under all prior plans. The Retiree Committee contends that prior plans or plan documents, not all of which were attached to the Stipulation, vested the retirees with unalterable lifetime benefits and could not have been terminated. A motion for summary judgment, however, cannot be defeated by the mere allegation that there are plan documents which were not produced.[1] *See* Rule 56, F.R.Civ.P. made applicable to this proceeding by Rule 7056, F.R.Bankr.P. ("an adverse party may not rest upon the mere allegations ... of the ... pleading, but [rather] the ... response, by affidavits or [other documentary evidence] ... must

set forth specific facts showing that there is a genuine issue for trial."); *McPherson v. Coombe*, 174 F.3d 276, 282 (2nd Cir. 1999). Nor is an adverse inference against the defendants appropriate, since the allegation that they have withheld plan documents is without any factual support.

█ The Retiree Committee next contends that various plan documents vested the retirees' rights under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* But, "[t]he general rule under ERISA is that an employee welfare benefit plan is not vested and ... an employer has the right to terminate or unilaterally to amend the plan at any time." *Joyce v. Curtiss–Wright Corp.*, 171 F.3d 130, 133 (2nd Cir.1999) (citing *American Federation of Grain Millers AFL—CIO v. International Multifoods*, 116 F.3d 976, 979 (2nd Cir.1997)).

> However, ... if an employer promises vested benefits, that promise will be enforced ... In this Circuit, to reach a trier of fact, an employee does not have to point to unambiguous language to support a claim. It is enough to point to written language *capable of being reasonably interpreted* as creating a promise on the part of the employer to vest the recipient's benefits.

*Multifoods*, 116 F.3d at 980. (internal quotation marks omitted) (emphasis in original). The Retiree Committee specifically identifies Raymark's March, 1985 plan as containing such vesting language, to wit: "[p]rovided you retire from Raymark with a Normal or Early Retirement benefit, you may continue Medical Plan coverage for yourself and your dependants. Dental benefits cease with active employment." *Exh. 30*, at R–18 at ¶ 1.

First, it is noted that the 1985 Plan is the only example the Retiree Committee cites, but even if it were correct that rights vested under the 1985 Plan, that result

---

1. The Retiree Committee's reliance on codes, the meaning of which is unclear, that appear in various documents, does not support its claim that there are missing plan documents.

There is no basis in the record to conclude that there are any plans other that those identified in the Stipulation and attached documents.

would not extend to the numerous other plans contained in the stipulated record. Moreover, the court does not agree with the Retiree Committee's interpretation of the 1985 Plan. Even taken out of context, the excerpted language cannot be reasonably construed as a promise of *lifetime* benefits. That observation is more apparent when read with the rest of the plan which includes the language on page I–1, "Some Important Facts ... Raymark hopes to be able to continue these plans indefinitely, *but reserves the right to modify or discontinue them at any time.*" (emphasis added).

■ The Raymark Committee further contends that proof of the retirees' vested rights, notwithstanding the termination of the 1998 Plans, is documented by letters Raymark sent to individual retirees. That argument suggests that the vesting of rights under a plan may be derived from an extrinsic source, *i.e.,* parol evidence. But in order for this court to consider parol evidence, the Retiree Committee must demonstrate an *intrinsic ambiguity* in the underlying relevant plan documents. *See, e.g., In re Keene Corp.,* 188 B.R. 881, 896 (Bankr.S.D.N.Y.1995).[2] No such ambiguity has been shown, and, as noted *supra, Op.* at 222, the Retiree Committee would offer nothing beyond what is already in the stipulated record in support of its argument if this matter went to trial. Accordingly, it is concluded that the 1998 Plans were the only plans in effect at the time of termination.

*Validity of termination of the 1998 Plans*

■ The Retiree Committee contends that the Trustee could not terminate the 1998 Plans because they were drafted in violation the ERISA requirement that an employee welfare benefit plan articulate "a procedure for amending such plan, and for identifying the persons who have the authority to amend the plan." 29 U.S.C. § 1102(b)(3). The argument is unavailing because Raymark's reservation of rights, which effectively names itself as having retained the unilateral ability to amend or terminate, establishes a procedure sufficient to satisfy ERISA. *See Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 85, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995).[3] Accordingly, the Trustee validly exercised her power to terminate the 1998 Plans, which as noted extinguished any rights the retirees' had under Raymark's prior superseded plans.

### ORDER

The defendants' motion for summary judgment is GRANTED, and it is SO ORDERED; and JUDGMENT shall enter in their favor.

2. The Retiree Committee's reliance on *Bidlack v. Wheelabrator Corp.,* 993 F.2d 603, 608 (7th Cir.1993) is unavailing. *Bidlack* held that "extrinsic evidence is admissible to show that a written contract which looks clear is actually ambiguous," but the Retiree Committee has not shown that the words contained in the plan documents were used in a "special sense," *id.,* that would be clarified by the letters.

3. The Retiree Committee also contends that the Trustee's termination of the 1998 Plans violated general trust law and 11 U.S.C. § 1114. However, ERISA explicitly preempts state law as to non-exempt plans, *see* 29 U.S.C. § 1144(a), while accommodating the broad remedial remedies afforded by general trust law once an ERISA violation is found. *See, e.g., Beck v. Levering,* 947 F.2d 639 (2nd Cir.1991). 11 U.S.C. § 1114, which addresses "payment of insurance benefits to retired employees," is not implicated here because the Trustee terminated benefits rather than seeking to modify them.