**In re RAYTECH CORPORATION,
Debtor.**

**Bankruptcy No. 89–00293.**

United States Bankruptcy Court,
D. Connecticut.

July 1, 1998.

Brian Cogan, Daniel H. Golden, Kenneth Pasquale, Stroock & Stroock & Lavan LLP, New York City, Elizabeth Austin, Pullman & Comley, LLC, Bridgeport, CT, for Movant Raytech Corporation.

Elihu Inselbuch, Graeme W. Bush, Caplin & Drysdale, Chartered, New York City, Robert S. Evans, Robert S. Evans, P.C., New Haven, CT, for Movant Official Committee of Unsecured Creditors.

Carl T. Gulliver, Coan, Lewendon, Royston, Deming & Gulliver, New Haven, CT, for Movant Robert F. Carter, Guardian Ad Litem for Future Claimants.

Richard D. Zeisler, Zeisler & Zeisler, Bridgeport, CT, Murray Drabkin, Hopkins & Sutter, Washington, DC, for Movant Official Committee of Equity Security Holders.

Deirdre A. Martini, Assistant United States Attorney, Bridgeport, CT, Henry S. Friedman, United States Department of Justice, Environmental Enforcement Section, Washington, D.C., for Movant United States.

Krista E. Trousdale, John Mooney, Assistant Attorney General, Hartford, CT, for Movant Connecticut Department of Environmental Protection.

Roberta Napolitano, Gerald T. Weiner, Weinstein, Weiner, Ingal, Napolitano & Shapiro, P.C., Bridgeport, CT, for Certain Raymark Industries' Retirees.

James Coleman, Vincent Marriott, William Slaughter, Ballard Spahr Andrews & Ingersoll, Philadelphia, PA, for Respondents Raymark Industries, Inc., and Raymark Corporation.

Carol A. Felicetta, New Haven, CT, for United States Trustee.

## MEMORANDUM AND ORDER ON MOTIONS TO TRANSFER VENUE

ALAN H.W. SHIFF, Chief Judge.

The debtor, Raytech Corporation ("Raytech"), Official Committee of Unsecured Creditors ("Creditors' Committee"), Guardian Ad Litem for Future Claimants, Official Committee of Equity Security Holders, United States Environmental Protection Agency, State of Connecticut Department of Environmental Protection, and certain retirees of Raymark Industries, Inc. have filed motions seeking a determination under Rule 1014(b) F.R. Bankr.P. and 11 U.S.C. §§ 101(2) and 105(a) that the debtors in two chapter 11 bankruptcy cases filed in the United States Bankruptcy Court for the District of Utah, *In re Raymark Industries, Inc.*, Case No. 98–B–22991 and *In re Raymark Corp.*, Case. No. 98–B–24212, are affiliates of Raytech and should be transferred to this district.[1]

---

1. The Raymark entities, *see infra* text at 23, raise several preliminary issues.

*Jurisdiction.* They contend that this court lacks jurisdiction to rule on the instant motions to transfer venue pending the appeals from the *sua sponte* Rule 1014(b) orders entered by this court. As noted *infra* n. 3, those appeals are no longer pending.

*Adversary Proceeding.* They also contend that a Rule 1014(b) venue transfer motion may only be brought in the context of an adversary proceeding, *see April 23, 1998 Trial Memorandum of Raymark Industries, Inc., in Opposition to Motion to Transfer Venue* at 6. However, Rule 7001 F.R.Bankr.P., which states the scope of adversary proceedings, does not include venue motions under Rule 1014(b).

*Waiver.* They further argue that the Creditors' Committee is barred by the doctrine of waiver because the Committee should have sought a transfer of venue after an involuntary proceeding was commenced against Raymark Industries in the Eastern District of Pennsylvania in 1989, one month before the commencement of this case. Even if there were merit to that argument, the instant motions would still be appropriately filed in this court because the Committee was joined by several other parties who did not waive their right to employ Rule 1014(b). Moreover, since an order for relief had not entered in the Raymark Industries involuntary proceeding, a venue transfer motion by the Committee in Pennsylvania would have been premature until the Pennsylvania court first determined that the Raymark case would be administered in that court. In fact, the Pennsylvania court did not enter an order for relief and that case was dismissed in 1996. *In re Raymark Industries, Inc.*, Case No. 89–20233T (Bankr.E.D.Pa. Aug. 9, 1996) (Twardowski, J.).

*Statute of Limitations and Laches.* The Raymark entities also contend that the movants are barred by Connecticut's statute of limitations and the doctrine of laches from "concoct[ing] a legal

For the reasons that follow, the motions are granted.

## BACKGROUND

Because the factual predicate for a determination of the instant motions is stated in the decisions of other courts as well as this court, a brief summary of the relevant facts is recited here, and familiarity with *Schmoll v. ACandS*, 703 F.Supp. 868 (D.Or. 1988), *aff'd*, 977 F.2d 499 (9th Cir.1992); *Raytech Corp. v. White*, No. B–89–623 (D.Conn. Aug. 28, 1991), *aff'd*, 54 F.3d 187 (3d Cir.1995), *cert. denied*, 516 U.S. 914, 116 S.Ct. 302, 133 L.Ed.2d 207 (1995); and *Raytech Corp. v. Official Committee of Unsecured Creditors' of Raytech Corp. (In re Raytech Corp.)*, 217 B.R. 679 (Bankr.D.Conn.1998), *appeal pending*, is assumed.

In the late 1980's, Raymark Industries, Inc. was in financial distress due in large part to asbestos-related litigation. Raytech was formed through a series of complex corporate transactions, *see Schmoll v. ACandS, Inc., supra*, 703 F.Supp. at 869–873, which were intended to insulate Raymark Industries' two most profitable assets from asbestos-related litigation. In the course of those transactions, Raytech purchased those assets, executed promissory notes in favor of Raymark Industries, and entered into an indemnity agreement. Raytech was subsequently named as a co-defendant with Raymark Industries in approximately 3,300 asbestos-related actions.

On December 23, 1988, the District Court for the District of Oregon determined that "Raytech is a successor in liability to Raymark Industries .... Therefore, Raytech is responsible for [Raymark Industries'] strict liability torts." *Id.* at 869, 875. The Ninth Circuit affirmed on October 26, 1992. *See Schmoll v. ACandS, supra*, 977 F.2d 499.

On March 10, 1989, during the pendency of the *Schmoll* appeal, Raytech filed for chapter 11 protection in this court. On June 16, 1989, Raytech commenced *Raytech v. White, et al.*, Adv. Proc. No. 89–5129, in this court against all present and future asbestos claimants, seeking a declaratory judgment that neither Raytech nor its subsidiaries were liable under any theory for the asbestos-related personal injury and wrongful death claims asserted against Raymark Industries and/or Raymark Corporation (the "Successor Litigation"). That action was removed to the district court. On August 28, 1991, the district court, *sua sponte*, dismissed the first count, which sought a declaratory judgment that Raytech was not liable as a successor for the liabilities of Raymark Industries, concluding that Raytech was precluded by collateral estoppel from relitigating *Schmoll. See Raytech Corp. v. White, supra*, No.B–89–623.

In February 1992, the Successor Litigation was transferred to the United States District Court for the Eastern District of Pennsylvania. It was thereafter certified to the Third Circuit Court of Appeals which ruled that Raytech was collaterally estopped from relitigating the issue of successor liability on the basis of *Schmoll* and affirmed the dismissal of the Successor Litigation. *See Raytech Corp. v. White, supra*, 54 F.3d 187. The United States Supreme Court denied certiorari on October 10, 1995. *See Raytech Corp. v. White, supra*, 516 U.S. 914, 116 S.Ct. 302, 133 L.Ed.2d 207.

theory based on the alleged invalidity" of the corporate restructuring. *March 30, 1988 Memorandum of Law of Raymark Industries, Inc. In Opposition to Motion* at 6–7. The statute of limitations assertion is premised upon an argument that the corporate restructuring, *see In re Raytech, infra*, 217 B.R. at 694–695, involved an unspecified tort. To the extent that the Raymark entities are relying on the fraudulent conveyance theory advanced by Raytech in prior litigation, that argument was raised and rejected in *In re Raytech, infra*, 217 B.R. at 691, *appeal pending. See also In re White, infra*, 54 F.3d at 192. Further, any legal argument raised by the Committee based on the alleged invalidity of the restructuring scheme was raised after the involuntary proceeding against Raymark Industries was dismissed in 1996 and is therefore not barred by the statute of limitations relied on by the Raymark entities. Finally, as to laches, that *doctrine is* not available in the absence of a showing that the party claiming it has been prejudiced by the delay. *See New Era Publications International, ApS v. Henry Holt and Co., Inc.*, 873 F.2d 576, 597 (2nd Cir.1989), *reh'g denied*, 884 F.2d 659, *cert. denied*, 493 U.S. 1094, 110 S.Ct. 1168, 107 L.Ed.2d 1071 (1990). There has been no such showing by the Raymark entities.

In November 1996, Raytech commenced *Raytech Corp. v. Official Committee of Unsecured Creditors of Raytech Corp., supra,* 217 B.R. 679, seeking a declaration that its successor liability was limited. On February 11, 1998, this court determined that Raytech's liability for asbestos-related claims was unlimited. *Id.* at 679, *appeal pending.*

On March 18, 1998, Raymark Industries filed a chapter 11 petition in the United States Bankruptcy Court for the District of Utah. On March 20, this court entered a *sua sponte* order suspending that proceeding pending the resolution of any issues under Rule 1014(b) F.R. Bankr.P. On March 24, the Creditors' Committee filed the instant Rule 1014(b) motion for the transfer of the Raymark Industries case to Connecticut.[2] On April 15, 1998, Raymark Corporation, Raymark Industries' parent company, likewise filed for chapter 11 bankruptcy protection in the District of Utah. On April 16, this court entered a second *sua sponte* Rule 1014(b) order which suspended that Utah case.[3] On April 27, the Creditors' Committee, the Guardian Ad Litem for Future Claimants, the United States Environmental Protection Agency, the State of Connecticut Department of Environmental Protection, the Official Equity Security Holders' Committee, Raytech, and certain Raymark Industries' retirees (hereinafter referred to collectively as the "movants") filed a second instant motion requesting the transfer of the Raymark Corporation case to Connecticut under the same rule and for the same reasons asserted for the Raymark Industries transfer. Raymark Industries and Raymark Corporation have agreed that they should be treated as a single party for the purpose of deciding these motions, *see tr. May 20, 1998 at 9,* and when referred to collectively, they are referred to as "the Raymark entities".

2. Although the motion was initially made solely by the Creditors' Committee, the Guardian Ad Litem for Future Claimants, the State of Connecticut Department of Environmental Protection, the United States Environmental Protection Agency, and Raytech have since joined in the motion.

# DISCUSSION

## I.

### Collateral Estoppel

■ The movants argue that the successor liability issue decided in *Schmoll v. ACandS, Inc., supra,* 703 F.Supp. 868, *Raytech Corp. v. White, supra,* No. B–89–623, *see also In re Raytech, supra,* 217 B.R. 679, is binding on the Raymark entities and should be applied by collateral estoppel to the issue of affiliation under Rule 1014(b) even though that issue was not before the *Schmoll* court. In support of that argument, they contend Raymark Industries was either a party in that case when judgment entered or it was in privity with Raytech at that time. Their argument is that since *Schmoll* found that the relationship between Raymark Industries and Raytech was sufficient to impose successor liability, that finding is also, by logical extension, sufficient to impose the less draconian consequence that Raymark is an affiliate of Raytech. *See Joint Trial Memorandum* at 7; *tr. May 20, 1998* at 27.

■ Persuasive evidence was presented to suggest that Raymark Industries was at least in privity with Raytech and that *Schmoll* should be binding upon Raymark Industries. Nonetheless, it does not follow that collateral estoppel may be applied to the affiliate issue. As this court recognized in *In re Raytech, supra,* 217 B.R. at 687, the application of collateral estoppel does not depend upon a complete identity of issues, but rather, upon a finding that an issue has by *necessary implication* already been decided. *Id.* (citing *BBS Norwalk One, Inc. v. Raccolta, Inc.,* 117 F.3d 674, 677 (2nd Cir.1997)). There is no such necessary implication here. However, the conclusion that the Raymark entities are affiliates of Raytech is compelled by bankruptcy law and policy.

3. On March 26 and April 23, 1998 Raymark Industries appealed the *sua sponte* orders. The district court dismissed the first appeal on May 15, holding that this court's March 20 order was mooted by the Creditors' Committee's motion to transfer venue. The other appeal was withdrawn on June 3.

## II.

## The Meaning of Affiliate Under the Bankruptcy Code

Rule 1014(b) F.R.Bankr.P. provides in pertinent part:

If petitions commencing cases under the Code are filed in different districts by or against ... (4) a debtor and an affiliate, on motion filed in the district in which the petition filed first is pending and after hearing on notice ..., the court may determine, in the interest of justice or for the convenience of the parties, the district or districts in which the case or cases should proceed. Except as otherwise ordered by the court in the district in which the petition filed first is pending, the proceedings on the other petitions shall be stayed by the courts in which they have been filed until the determination is made.

The term "affiliate" is defined in § 101(2) as

(A) [an] entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor[.]

... [or]

(B) [a] corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor[.]

There is no question that the Raytech and Raymark bankruptcies should be administered in the same district. To rule otherwise would invite not only the possibility of redundant litigation and inconsistent decisions, but also the attendant waste of resources and increased administrative expenses that would reduce the property available for distribution to creditors. The controversy here is which court will make that decision. If the requisite affiliation required by Rule 1014(b) is established, it will be this court; otherwise, if asked, the Utah court will decide under 28 U.S.C. § 1412 what is "in the interest of justice or for the convenience of the parties".

The Raymark entities contend that § 101(2) sets out a "bright line" test for the requisite affiliation. *See Trial Memorandum of Raymark Industries, Inc. in Opposition to Motion to Transfer Venue* at 4–5. The movants disagree and argue the definition of affiliate was not intended to ignore business realities and does not require the court to consider form over substance. *Reply Memorandum in Support* at 4. *See also Retiree's Memorandum in Support.*

■ Code section 105(a), on which the movants rely, provides that this court may "... issue any order, process, or judgment which is necessary to carry out the provisions of this title." Section 105(a) was enacted to permit courts a measure of flexibility from the literal language of the code to carry out the drafters' intent, recognizing that under isolated circumstances, a literal reading might thwart its purpose. *See Hassett v. BancOhio National Bank (In re CIS Corp.),* 172 B.R. 748, 757 (S.D.N.Y.1994) ("[Section 105] ... provides the court with equitable powers to further the substantive provisions of the code"); *In re One Times Square Associates Limited Partnership,* 159 B.R. 695, 702 (Bankr.S.D.N.Y.1993) ("Congress enacted 11 U.S.C. § 105 because [it] knew that [it] could not envision all matters dealing with a bankruptcy court or the creativity of attorneys"), *aff'd,* 165 B.R. 773 (S.D.N.Y.1994), *aff'd,* 41 F.3d 1502 (2nd Cir.1994), *cert. denied,* 513 U.S. 1153, 115 S.Ct. 1107, 130 L.Ed.2d 1072 (1995). *See also, e.g., In re Gurney,* 192 B.R. 529, 537 (9th Cir. BAP 1996) ("Section 105(a) allows the bankruptcy courts to inject traditional equitable principles into the operation of the bankruptcy system to prevent abuse of the drafter's intent.") The 1994 amendments to the bankruptcy code reiterated the broad purpose behind § 105. *See* H.R.Rep. No. 103–835 at 123 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340 ("This section makes a number of changes to clarify the powers of bankruptcy courts in managing bankruptcy cases.")

It is well settled that bankruptcy law and policy is intended to provide an efficient and expeditious administration of bankrupt estates. *See* H.R.Rep. No. 103–835 at 116 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340 ("[One of] the bankruptcy system's twin ob-

jectives [is to] increase the efficiency of the bankruptcy process..."); *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) ("... this Court has long recognized that a chief purpose of the bankruptcy laws is 'to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period ...' "); *In re Cuyahoga Equipment Corp.,* 980 F.2d 110, 117 (2nd Cir.1992) ("... the strong bankruptcy code policy ... favors centralized and efficient administration of all claims in the bankruptcy court...")

A literal reading of Rule 1014(b) would frustrate that policy by ignoring the financially intertwined relationship between Raytech and the Raymark entities. Therefore, in determining whether Rule 1014(b) has been satisfied, this court will look to the purpose of the rule rather than its literal language. Indeed, since Rule 1014(b) is intended to avoid inefficiencies and waste of judicial and other resources, that construction is mandated in these cases and the use of § 105(a) to achieve that result is warranted.

As the court ruled in *In re Dececco,* Case No. 95–6533–9P7, slip op. at 3 (Bankr. M.D.Fla. May 1, 1998) (Paskay, J.), "[t]he intent of ... Rule [1014(b) ] is to cover those situations where the joint administration of related entities is appropriate and just" (the related entities were husband and wife), *appeal pending.* The joint administration of these cases is more than merely appropriate and just, it is necessary to prevent the decisions in *Schmoll, supra,* 703 F.Supp. 868, *White, supra,* No. B–89–623, and *In re Raytech, supra,* 217 B.R. 679, which imposed unlimited successor liability on Raytech, from being vitiated. The predicate for each of those decisions was the finding that a sophisticated corporate restructuring scheme was designed with the improper purpose of escaping asbestos related liability by the management of the Raymark entities, including Craig Smith.

Under the law of this case, *see In re Raytech supra,* 217 B.R. at 692, the Raymark

entities and Raytech are inextricably joined by that discredited, but not nullified, restructuring scheme, *see Schmoll* 703 F.Supp. at 874 ("... although the corporate restructuring meets the technical formalities of corporate form .... there is no just reason to respect the integrity of those transactions"). Indeed a persuasive argument could be made that they are one entity. Raytech and Raymark Industries are each creditors in the others bankruptcy case.[4] Also, because of successor liability, those debtors share a common creditor pool. Further, the overlap of creditors and issues in the Raymark cases and Raytech is so pervasive that, in the absence of joint administration, each court will have to monitor the activities of the other and try to accommodate the needs of the other.

Accordingly, Raymark is an affiliate of Raytech.

### III.

### Convenience of the Parties and the Interests of Justice

Rule 1014(b) provides that if affiliation is established, "the court [in the district in which the petition first filed is pending] may determine, in the interest of justice or for the convenience of the parties, the districts or districts the case or cases should proceed." The "interest of justice" and "convenience of the parties" test is identical to the test for transferring venue under 28 U.S.C. § 1412. The resolution of venue motions turns on the particular facts in each case. *In re Finley, Kumble, Wagner, et al.,* 149 B.R. 365, 368 (Bankr.S.D.N.Y.1993).

The "interest of justice" is a flexible standard which considers whether a transfer of venue would promote timeliness, fairness, the efficient administration of the bankruptcy estate, and judicial economy. *Gulf States Exploration Co. v. Manville Forest Products Corp (In re Manville Forest Products Corp.),* 896 F.2d 1384, 1391 (2nd Cir.1990). In order to grant the motion, the

---

4. Raytech asserts a claim against Raymark Industries for indemnity for asbestos related claims, while Raymark Industries asserts a claim against Raytech on the promissory notes, *see supra* text at 22–23, and the automatic stay in each case is applicable as to those claims.

**26**

moving party must show by a preponderance of the evidence that a transfer of venue is appropriate. *In re Finley,* 149 B.R. at 368–369. The relevant factors for that determination include: the proximity of creditors of every kind to the court; the proximity of the debtor to the court; proximity of the parties' attorneys; the proximity of witnesses necessary for the administration of the estate; the location of the assets; the economic administration of the estate; and the necessity for ancillary administration if liquidation should result. *Id.* at 369.

 Rather than address each of the above factors *seriatim,* it is sufficient to note the undisputed evidence that the Raymark entities contact with Utah are at most minimal. The evidence established that in 1997, each of the Raymark entities merged into Utah corporations. The only other contacts is that Raymark Industries employed James Cobb, who used an office in his daughter's Utah home as a consultant in May, 1997. *Tr. May 20, 1998* at 189–192. James Cobb is no longer employed by that company. *Tr. February 17, 1998* at 70, 92–93. It is undisputed that Raymark Industries conducts no business, owns no property, and has no employees in Utah. *Tr. May 20, 1998* at 191. Even more to the point, when asked by the court whether "a persuasive argument could be made that the District of Utah is a convenient place for the administration of the Raymark bankruptcies," counsel for the Raymark entities responded, "Your honor, I think it is a difficult argument to make. I think the best argument I can make is that it is no worse or better than this." *Id.* at 233.

The connections with Connecticut are by contrast numerous, long-standing, and substantial. The Connecticut Department of the Environmental Protection and the United States have claims arising out of the alleged pollution of Raymark Industries' former manufacturing site in Stratford, Connecticut. The witnesses having knowledge of those claims are located predominantly in Connecticut and Massachusetts. Craig Smith, the former president of Raytech and the current president of Raymark Industries, resides in Connecticut. Moreover, since March 10, 1989, this court has spent innumerable hours

on innumerable issues in this case, including the debtor's relationship to the Raymark entities.

Accordingly, it is concluded that the interest of justice and the convenience of the parties are best served by the transfer of venue of the Raymark cases to this court.

### ORDER

The motions to transfer venue are granted and IT IS SO ORDERED.