In re RAYTECH CORPORATION; Raymark Industries, Inc.; and Raymark Corporation, Debtors.

Nos. 89–00293, 98–51532, 98–51540.

United States Bankruptcy Court, D. Connecticut.

April 18, 2001.

David Botter, James Chu, Akin, Gump, Strauss, Hauer & Feld, L.L.P., New York City, Elizabeth J. Austin, Pullman & Comley, LLC, Bridgeport, CT, for movant debtor Raytech Corp.

James Graham, Pepe & Hazard LLP, Hartford, CT, for movant Laureen M. Ryan, chapter 11 trustee for debtors Raymark Industries Inc. and Raymark Corporation.

Peter Van N. Lockwood, Caplin & Drysdale, Chartered, Washington, DC, for the Official Committee of Unsecured Creditors.

Stephen E. Garcia, Hopkins & Sutter, Chicago, IL, Richard Zeisler, Zeisler & Zeisler, Bridgeport, CT, for respondent Official Equity Committee.

James Walker, Walker & Wylder, Ltd., Bloomington, IL, Pamela S. Hollis, Hollis and Johnson, Chicago, IL, John G. Dzurik, Goldstein and Peck, P.C., Bridgeport, CT, for respondents Lanigan and Debolt, et al.

Dominic Fulco, III, Reid & Riege, Hartford, CT, for respondent Bjork, Lawrence.

Alan Robert Baker, Baker O'Sullivan & Bliss, P.C., Wethersfield, CT, for respondents Nelson Mullins, et al.

Carl T. Gulliver, Coan, Lewendon, Royston & Gulliver, New Haven, CT, for the Guardian Ad Litem of Future API Claimants.

Ann M. Nevins, Assistant United States Attorney, Office of the United States Attorney, Bridgeport, CT, for the United States Environmental Protection Agency.

Krista Trousdale, Assistant Attorney General, Office of the Attorney General, Hartford, CT, for the Connecticut Department of Environmental Protection.

## MEMORANDUM OF DECISION AND ORDER APPROVING SETTLEMENT AGREEMENT

ALAN H. W. SHIFF, Chief Judge.

This joint motion, which seeks approval of a proposed settlement that, *inter alia,* would withdraw and release certain claims between the Raytech Corporation and Raymark estates, was filed on March 13, 2001. *See* Rule 9019(a) F.R.Bankr.P. The settlement proposes to resolve the last major impediments to the consummation of Raytech's Second Amended Plan of Reorganization ("Plan"). As identified in the March 19, 2001 pretrial order, the issue here is whether the proposed settlement "falls within the lowest point in the range of reasonableness and is in the best interests of the Debtors' estates." In order to understand the context in which settlement has been proposed, an abbreviated statement recounting the relationship between Raytech, Raymark Industries Inc., and Raymark Corp., as well as the events which occurred before and after their respective bankruptcy petitions, is provided. Familiarity with the prior decisions in these cases is assumed. *See, e.g., Schmoll v. ACandS,* 703 F.Supp. 868 (D.Or.1988), *aff'd,* 977 F.2d 499 (9th Cir.1992); *Raytech Corp. v. White,* No. B–89–623 (D.Conn. Aug. 28, 1991) (Daly, J.), *aff'd,* 54 F.3d 187 (3d Cir.1995), *cert. denied,* 516 U.S. 914, 116 S.Ct. 302, 133 L.Ed.2d 207 (1995); *Raytech Corp. v. White,* No. Civ. A. 92–1451, 1994 WL 45724 (E.D.Pa.1994); *Raytech Corp. v. Official Committee of Unsecured Creditors' of Raytech Corp. (In re Raytech Corp.),* 217 B.R. 679 (Bankr. D.Conn.1998), *In re Raytech Corp.,* 222 B.R. 19, 23 (Bankr.D. CT 1998), *In re Raytech Corp.,* 238 B.R. 241 (Bankr.D. CT 1999) *Ryan, et al. v. Smith, et al.,* 228 B.R. 524 (Bankr.D. CT 1999), *Raytech v. Pension Benefit Guaranty Corp.,* 241 B.R. 790 (Bankr.D. CT 1999), *aff'd,* 261 B.R. 350 (Bankr.D. CT 2001), *Creditors' Committee of Retirees v. Raytech,* 242 B.R. 222 (1999).

### BACKGROUND

In the late 1980's, the financial viability of Raymark Industries, Inc. was threatened by asbestos-related litigation. *In re*

*Raytech Corp.*, 222 B.R. 19, 23 (Bankr.D. CT 1998). Raytech was formed through a series of complex corporate transactions, *see Schmoll v. ACandS, Inc., supra,* 703 F.Supp. at 869–873, which were intended to insulate Raymark Industries' two most profitable assets from that litigation. In the course of those transactions, Raytech purchased those assets, executed promissory notes in favor of Raymark Industries, and entered into an indemnity agreement. Raytech was subsequently named as a co-defendant with Raymark Industries in approximately 3,300 asbestos-related actions.

On December 23, 1988, the District Court for the District of Oregon determined that "Raytech is a successor in liability to Raymark Industries .... Therefore, Raytech is responsible for [Raymark Industries'] strict liability torts." *Id.* at 869, 875. The Ninth Circuit affirmed on October 26, 1992. *See Schmoll v. ACandS, supra,* 977 F.2d 499. On March 10, 1989, during the pendency of the *Schmoll* appeal, Raytech filed for chapter 11 protection in this court. On June 16, 1989, Raytech commenced *Raytech v. White, et al.,* (Adv.Proc. No. 89–5129), in this court against all present and future asbestos claimants, seeking a declaratory judgment that neither Raytech nor its subsidiaries were liable under any theory for the asbestos-related personal injury and wrongful death claims asserted against Raymark Industries and/or Raymark Corporation (collectively the "Raymark entities") (the "Successor Litigation"). That action was removed to the district court. On August 28, 1991, the district court, *sua sponte,* dismissed the first count, which sought a declaratory judgment that Raytech was not liable as a successor for the liabilities of Raymark Industries, concluding that Raytech was precluded by collateral estoppel from relitigating Schmoll. *See Raytech Corp. v. White, supra,* No. B–89–623 (D.Conn. Aug. 28, 1991). In February 1992, the Successor Litigation was transferred to the United States District Court for the Eastern District of Pennsylvania which ruled that Raytech was collaterally estopped from relitigating the issue of successor liability on the basis of *Schmoll,* holding that "when the creditor's committee prevailed on Count I, it effectively prevailed on all counts." *In re Raytech Corp., supra,* 217 B.R. at 683. The matter was thereafter certified to the Third Circuit Court of Appeals which affirmed the dismissal of the Successor Litigation. *See Raytech Corp. v. White, supra,* 54 F.3d 187. The United States Supreme Court denied *certiorari* on October 10, 1995. *See Raytech Corp. v. White, supra,* 516 U.S. 914, 116 S.Ct. 302, 133 L.Ed.2d 207 (1995).

In November 1996, Raytech commenced *Raytech Corp. v. Official Committee of Unsecured Creditors of Raytech Corp., supra,* 217 B.R. 679, seeking a declaration that its successor liability was limited. On February 11, 1998, this court determined that Raytech's liability for asbestos-related claims was unlimited. *Id.* at 679. On March 18, 1998, Raymark Industries filed a chapter 11 petition in the United States Bankruptcy Court for the District of Utah, as did Raymark Corp. two weeks later. On July 1, 1998, this court held that those entities were affiliates of Raytech and transferred those cases here. *In re Raytech Corp.,* 222 B.R. 19 (Bankr.D. CT 1998).

The joint administration of these cases is more than merely appropriate and just, it is necessary to prevent the decisions in *Schmoll, supra,* 703 F.Supp. 868, *White, supra,* No. B–89–623, and *In re Raytech, supra,* 217 B.R. 679, which imposed unlimited successor liability on Raytech, from being vitiated. The predicate for each of those decisions was the finding that a sophisticated corporate restructuring scheme was designed with

the improper purpose of escaping asbestos related liability by the management of the Raymark entities, including Craig Smith.

Under the law of this case, *see In re Raytech supra*, 217 B.R. at 692, the Raymark entities and Raytech are inextricably joined by that discredited, but not nullified, restructuring scheme, *see Schmoll*, 703 F.Supp. at 874 ("although the corporate restructuring meets the technical formalities of corporate form .... there is no just reason to respect the integrity of those transactions"). Indeed a persuasive argument could be made that they are one entity. Raytech and Raymark Industries are each creditors in the others bankruptcy case. Also, because of successor liability, those debtors share a common creditor pool. Further, the overlap of creditors and issues in the Raymark cases and Raytech is so pervasive that, in the absence of joint administration, each court will have to monitor the activities of the other and try to accommodate the needs of the other.

*In re Raytech Corp.*, 222 B.R. 19 at 25.

It is noteworthy that the court denied a motion to substantively consolidate all three of these cases, holding:

[S]ubstantive consolidation of the Raymark entities with Raytech at an earlier juncture would have eliminated the inter-entity disputes that arose after the Raymark entities filed chapter 11.

However, it was apparent that the parties did not want such consolidation, and the court was disinclined to order that result *sua sponte* ... This court has imposed an accelerated confirmation schedule on the principal constituencies, who now have drafted a consensual plan. In compliance with that schedule, a disclosure statement hearing has been set for April 26, 2000. By contrast, the confirmation process for the Raymark entities is not yet feasible. Raytech's case was filed in 1989. Distributions to the holders of its allowed claims should not be further delayed.

March 16, 2000 *Order Denying Motion for Substantive Consolidation.*

On November 5, 1998, after Raymark's initial opposition was withdrawn, an order entered approving the United States Trustee's appointment of Laureen M. Ryan as trustee in the Raymark cases (hereinafter referred to as the "Raymark trustee"). On December 21, 1998, the court entered an order authorizing Raytech to "backstop" the fees and expenses of certain professionals employed by the Raymark trustee.[1]

Accordingly, notwithstanding their separate estates, the practical effect of the successor liability determination is that the Raytech and the Raymark entities share well over $300 billion of claims against them.[2] The proposed settlement, a copy of which is attached as an Appendix for ease of reference, is an attempt to eliminate

---

**1.** The so-called backstop is actually insurance against Raymark's administrative insolvency. The arrangement was designed to ensure that the Raymark trustee would be able to continue to prosecute litigation against various defendants in the event that the Raymark estates became administratively insolvent, i.e., unable to pay administrative claims, including-the claims of the professionals employed by the Raymark trustee. *See* Raytech's November 18, 1998 *Motion for Authorization to "Backstop"* ... at 7–8. In the 1998 motion, Ray-

tech asserted that it would benefit from any recovery obtained by the Raymark trustee because it had filed a proof of claim in the Raymark cases.

**2.** On August 5, 1999, the Raymark trustee filed five proofs of claim against Raytech asserting (1) a claim for $33,694,454.49 (plus interest from February 2, 1997 through March 18, 1998, less payments actually made) based upon, *inter alia*, obligations arising from that certain 1987 Asset Purchase Agreement between Raymark and Raytech and a

duplicative claims and the concomitant administrative expense and delay associated with prosecuting them, so that distributions can finally be made under Raytech's Plan over twelve years after its bankruptcy petition was filed. Resolution of the instant motion is time sensitive because Raytech's common stock is listed on the New York Stock Exchange, which has stated that it will delist Raytech unless the company satisfies the exchange's capitalization rules, which in turn will necessitate the issuance of new stock by April 20, 2001. That cannot be accomplished unless Raytech substantially consummates its Plan by that date, and that cannot be achieved unless the proposed settlement is approved by this court. It is apparent that the delisting of Raytech's stock by the New York Stock Exchange may threaten the value of the distribution to creditors under the Plan.

### *THE PROPOSED SETTLEMENT*

On April 11, 2001, shortly after the trial on the instant matter commenced, the movants sought leave to amend their motion for the purpose of supplementing the term sheet ("Term Sheet") with a three page addendum ("Addendum"), *see Appendix*, to clarify which claims each of the estates was relinquishing or retaining. The amended motion was otherwise identical to the original. The Equity Committee supported the amendment. Respondents, Bjork Lawrence, Lanigan and Debolt, and Nelson and Riley, who are defined below, objected, contending that the amendment altered the material terms of the proposed settlement. Mindful that amendments are "freely given when justice so requires", Rule 15(a) F. R.Civ.P., made applicable here by Rule 7015 F.R. Bankr.P., the court overruled the objections and granted the motion, noting on the record that the three objectors failed to identify any applicable factors which might justify denial of leave to amend, *e.g.*, "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment,

promissory note, dated February 1, 1997, in the original principal amount of $33,694,454.49; (2) A contingent, unliquidated claim for contribution, to the Pension Benefit Guaranty Corporation for an estimated amount of $20,631,268. It is noted that this claim is duplicative of the claims filed against Raytech by the Pension Benefit Guaranty Corporation; (3) A claim for indemnification and/or contribution of any costs of environmental remediation related to Raymark's properties, for an amount not less that $16,000,000. A judgment of not less than $16 million has been entered in favor of the United States E.P.A. in connection with the environmental remediation of the Stratford property. It is noted that this claim is duplicative of the claims filed against Raytech by the EPA and the State of Connecticut. (4) A contingent, unliquidated claim for contribution, to the claims of asbestos personal injury claimants. This claim is estimated by the Trustee to be in the amount of $300 billion. It is noted that this claim is duplicative of the claims of the asbestos-personal injury claims against Raytech, which have been estimated for purposes of the Plan to exceed $7 billion. (5) A contingent, unliquidated claim for contribution, to the extent and in the event that Raytech is held liable in any capacity for the claims of the retirees of Raymark for an estimated amount of $10–12 million. It is noted that this claim is duplicative of the claims asserted against Raytech by approximately 800 Raymark retirees. *See Movants' Exh.* H1—H5.

On August 6, 1999, Raytech filed a proof of claim in each of the Raymark Cases in an unliquidated amount of approximately the same magnitude as the Raymark entities' proofs of claim, "based upon theories of common law and/or contractual contribution and indemnification." *See Movants' Exh.* M. Raytech also contends that it has certain administrative claims against Raymark arising from Raytech's payment of the fees and expenses for certain professionals who have rendered services to the Raymark estates. *See id.* and *Appendix*

futility of the amendment, etc." *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), *cited in Chrysler Corp. v. Fedders Corp.,* 540 F.Supp. 706, 715 (S.D.N.Y.1982). Since the amended motion with attached Term Sheet, docket no. 2403, which is now the subject of this contested matter, merely clarifies part of the Term Sheet which was attached to the original motion, docket no. 2360, and does not make any material substantive change, the granting of the instant motion is tantamount to the granting of the original motion. The same record and the applicable case law set forth below supports both. *See infra* text at 357–61.

Among other things, the Term Sheet provides that in consideration of her agreement to withdraw all of her claims against Raytech, the Raymark trustee and the Raymark estates shall receive a continuing backstop guaranty from Raytech limited to a maximum of $1,000,000. Any amounts paid by Raytech under the backstop, which are subject to court approval after notice and a hearing, may be reimbursed if and when assets become available in the Raymark estates to satisfy that claim. *See infra* text at 357–58. Raytech also will continue to pay the fees and expenses of certain counsel of Raytech and the Raytech Creditors' Committee who have been actively involved in the prosecution of the *Ryan v. Smith* litigation, *see Ryan, et al. v. Smith, et al.,* 228 B.R. 524 (Bankr.D. CT 1999), for which the reference has been withdrawn. *See* 99 CV 284 (D.Conn.) (DJS). The Term Sheet further gives Raytech and the Raytech Creditors' Committee budgeting and monitoring oversight of the Raymark estates and provides that they be designated as parties-in-interest for the purpose of raising any objections to administrative expense applications in the Raymark Cases.

## RESPONDENTS' OBJECTIONS TO THE PROPOSED SETTLEMENT

At the outset, it is worthy of note that none of the respondents stand to gain financially from a successful challenge to the proposed settlement because the settlement does not materially implicate their pecuniary interests. The fact that denying this motion will be of no economic benefit to the respondents raises the suspicion that they have interposed the objection for the purpose of pressuring the Raymark trustee to acquiesce to their apparent hope that she withdraw her preference actions against them and afford Raytech an administrative claim against the Raymark estates. Nonetheless, they have standing to object to the proposed settlement. *See* § 1109(b). Two of the respondent constituencies are law firms: Bjork Lawrence Poeschl and Kohn, et al. ("Bjork Lawrence"); and Nelson Mullins Riley & Scarborough LLP.; Sullivan Hill, Rez and Engel.; and the Tom Riley law firm, P.L.C. (collectively "Nelson and Riley"). Those law firms are among the defendants in numerous adversary proceedings filed by the Raymark trustee to recover prepetition retainers and payments as preferences and/or fraudulent conveyances.[3] Respondents Beverly Lanigan and Nancy Debolt hold personal injury judgments against Raymark Industries, Inc. in excess of $3,000,000, emanating from prepetition state court actions. They are also defendants in an adversary proceeding commenced by the Raymark trustee. *See* AP 00–05050. Lanigan and Debolt have asserted liens against one of Raymark Industries' insurers. The fourth respondent

---

**3.** *See, e.g.,* proceedings pending before District Judge Squatrito (D.CT): 3:1999mc0098; 3:2000mc00169; 3:2000cv01854; 3:2000mc00497; 3:2000cv02134.

is the Equity Committee, which represents the holders of 10% of the stock of the reorganized Raytech' under its Plan. The respondents' principal objections are that the backstop and oversight provisions are improper.

## DISCUSSION

### I

### THE BACKSTOP ARRANGEMENT

■ Bjork Lawrence, Nelson and Mullins, and the Equity committee each, for different reasons, challenge the $1,000,000 backstop arrangement whereby Raytech would fund litigation commenced by the Raymark trustee. *Ryan, et al. v. Smith, et al.*, 99 CV 284 (D.Conn.) (DJS). The objections raised by Bjork Lawrence and Nelson and Mullins claim that the Term Sheet's proposal to pay the fees of the Raymark trustee compromises her independence, creates an appearance of impropriety, and constitutes a breach of her fiduciary duty to the Raymark estates. In essence they argue that the Raymark trustee's proposal to relinquish certain claims against Raytech in exchange for Raytech's backstop obligation to pay certain allowed fees and expenses constitutes a conflict of interest. *See Bjork Lawrence's March 23, 2001 Memorandum of Law* at 2, 10 and closing argument, tape of April 12, 2001 hearing at 3:47. *See also Nelson and Mullin's March 23, 2001 Memorandum of Law* at 2–3.

The respondent law firms rely on *In re Redman*, 69 B.R. 27, 29 (Bankr.D. HI 1986) for the proposition that a trustee "is not authorized to contract with any party, including the debtor, for his compensation, and any such agreement is nonbinding." *Id.* Reliance on *Redman* is unavailing. The bankruptcy court in *Redman* denied a motion to approve an agreement wherein the chapter 7 debtor proposed to "pay the trustee and his attorney all hourly charges and reimburse all expenses incurred in connection with the ... case" as a *quid pro quo* for the trustee's "forbearance of any opposition to the [debtor's] motion to dismiss," a motion the trustee had previously opposed. Here, the Raymark trustee and her professionals are to be paid from the Raymark estates in the first instance. Any administrative insolvency in those estates will be backstopped by Raytech up to $1 million. The evidence adduced at trial indicates that the Raymark estates are presently solvent. Under the proposed settlement, Raytech will retain the right to seek reimbursement from the Raymark estates of any funds allowed by the court. Moreover, since, as noted in *In re Raytech Corp., supra,* 222 B.R. 19 at 25, the Raytech and Raymark estates share a common universe of creditors, the overwhelming majority of which will be paid under Raytech's Plan, the Raymark trustee's withdrawal of her claim against Raytech, so that funds will be available to pay those creditors, is warranted. Under that indisputable scenario it is apparent that there is no conflict of interest.

The Equity Committee argues that the backstop arrangement should be characterized as a loan from Raytech and, accordingly, that any funds advanced under the backstop should be entitled to an administrative expense priority claim against the Raymark estates. The argument that a commercial lender would not provide funds to the Raymark estates without being granted a superpriority lien is unpersuasive since Raytech is not a commercial lender and this instrument is not a loan. *Tape of April 11* at 12:36. Rather, Raytech's funding obligation is conditioned on the Raymark estates' inability to pay certain specified administrative expenses not to exceed $1 million, and Raytech's ability to seek reimbursement from the Raymark

estates relating to those expenses should it choose to do so. Equity also contends that the settlement lacks adequate consideration for Raytech's unlimited funding of its and the U.K. professionals's fees and expenses in *Ryan v. Smith*, for which there is no provision for reimbursement. But as the Raymark trustee persuasively testified, the litigation she commenced in *Ryan v. Smith* will inure to the benefit of the creditors of each estate because the recovered assets, including stock, will be held by cooperative rather than competing interests. It is also noted that if Raytech, which is a co-plaintiff in that litigation, were to prevail, it would hold a claim, albeit subordinated, against the Raymark estates. *See Appendix*, Addendum at ¶ I14.

Moreover, the backstop provision is but one small part of an integrated settlement agreement which, if approved, will bring closure to the successor litigation issue decided by *Schmoll v. ACandS*, 703 F.Supp. 868 (D.Or.1988), *Raytech Corp. v. White*, No. B–89–623 (D.Conn. Aug. 28, 1991) and *Raytech Corp. v. Official Committee of Unsecured Creditors' of Raytech Corp. (In re Raytech Corp.)*, 217 B.R. 679 (Bankr.D.Conn.1998), so that asbestos claimants may receive a distribution of their allowed claims under the Plan.

## II

### *THE OVERSIGHT PROVISION*

■ The budgeting and monitoring oversight provision of the proposed settlement memorializes a *de facto* arrangement among the Raymark trustee, Raytech and its Creditors' Committee, and the United States trustee that has existed since the 1998 backstop order. *See supra* text at 354–55. On the authority of that order those parties established a "budgeting committee" to facilitate the sharing of information, advise the Raymark trustee,

and expedite the progress of the Raymark proceedings in light of Raytech's own protracted chapter 11 case. Each of the respondents, apart from the Equity Committee, contend that the proposed oversight provision compromises the independence of the Raymark trustee. As evidence of the Raymark trustee's alleged favoritism, they point to her selective prosecution of actions against them.

They suggest the following syllogism: a member of the Raytech Creditors' Committee serves on the three person budgeting committee which oversees the Raymark trustee. The Raytech Creditors' Committee is in turn comprised of certain asbestos personal injury plaintiffs attorneys. Therefore, the Raymark trustee will not file a preference action against any client of a member of the Creditors' Committee. In that context Lanigan and Debolt argue that it is unfair that the Raymark trustee has filed an adversary proceeding to prevent them from collecting insurance proceeds when she has not brought preference actions against other personal injury claimants who were similarly situated, i.e., received an insurance payment in the preference period. They also argue that the Raymark trustee has not prosecuted litigation post-petition, which the Raymark estates had commenced pre-petition, against the personal injury plaintiffs' bar.

The respondents' attempt to characterize the oversight provision as controlling is belied by the record. Raytech's general counsel and the Raymark trustee testified that the oversight provision simply means that the parties will continue to share information and that the budgeting committee will continue, as it has since the 1998 backstop order, to monitor and observe the actions of the Raymark trustee and to alert her to any potential error or omission. They conceded that Raytech and its

Creditors' Committee do not have control and the oversight provision does not give them any control over the Raymark trustee. The oversight arrangement is therefore nominal. *Tape of April 11* at 2:26 and at 4:16. Indeed, the respondents did not point to a scintilla of persuasive evidence to support their assertion that the Raymark trustee is in any way controlled by the Raytech Creditors' Committee or that in an effort to please it, she has an incentive to engage in self-censorship by the selective filing and prosecution of preference actions.[4]

The Raymark trustee articulated a persuasive reason why she declined to pursue the action or actions against the asbestos personal injury plaintiffs' bar that the Raymark entities had commenced prepetition, i.e., that litigation had resulted in sanctions being imposed against the Raymark entities. Moreover, the Raymark trustee has authorized her attorney to provide advice to a bankruptcy estate unrelated to this case in its prosecution of an action against the asbestos personal injury plaintiffs' bar similar to the action or actions commenced by the Raymark entities. It is unlikely she would have authorized that consultation if she harbored any favoritism toward the asbestos personal injury plaintiffs' bar.

Under the terms of the proposed settlement, the Raymark trustee is free to pursue preference actions against any defendant except Raytech, *see Appendix,* Term Sheet at ¶ 1b, ¶ 2a, and the Addendum at ¶ A, ¶ B, attached to the April 11, 2001 amended motion, although there may be limitations imposed by the bankruptcy code or state law that restrict her ability to do so, e.g., a statute of limitations. *Tape of April 12* at 12:37. As to the allegation

by Lanigan and Debolt that the Raymark trustee avoided or refused to talk to them, there is no evidence to support that assertion. Indeed, she testified that she voluntarily provided them with information as late as April 10, 2001.

## III

### *MISCELLANEOUS OBJECTIONS*

The other objections raised by the respondents include the assertion that this court did not provide them adequate procedural due process, and that the proposed settlement does not adequately disclose which claims are being released or retained. *See Nelson and Riley's March 23, 2001 Objection* at 2. The assertion that this court did not afford the respondents adequate procedural due process was addressed at an April 2, 2001 status conference, at which the court rescheduled the trial that was scheduled to have begun on that date to April 11. The court also extended the pretrial order's discovery deadline so that the respondents could depose the Raymark trustee. The objection that the material terms of the proposed settlement have not been disclosed is deemed moot since the alleged ambiguities identified by the respondents have been clarified by the Addendum to the Term Sheet.

## IV

### *REASONABLENESS OF SETTLEMENT*

 Rule 9019(a), F.R. Bankr.P., provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Bankruptcy courts in this circuit may only

---

**4.** Those respondents have not previously claimed in this court that they were being selectively prosecuted by the Raymark trustee, nor is there any record here that they have raised that defense or otherwise presented that argument to the district court.

approve a proposed settlement after an independent determination that it does not "fall below the lowest point in the range of reasonableness." *Resolution Trust Corp. v. Best Prod. Co. (In re Best Prods. Co.)*, 177 B.R. 791 (S.D.N.Y.1995), *aff'd.*, 68 F.3d 26 (2d Cir.1995); *In re Fairfield Lumber & Supply Co.*, 214 B.R. 441, 443 (Bankr. D.Conn.1997). The inquiry requires this court to "evaluat[e] ... the fairness of the terms of the compromise" and to "form an educated estimate of the complexity, expense, and likely duration of [any unsettled] litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a fair and full assessment of the wisdom of the proposed compromise." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–425, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968), *cited in In re Power Company of America*, No. 3:00 CV 737 at 2 (D. Conn. June 8, 2000)(SRU).

■ In applying that standard, the bankruptcy court does not need to conduct a "mini-trial" of the merits of the claims underlying the controversy being settled. *See, e.g., W.T. Grant*, supra, 699 F.2d at 608. *In re Fairfield Lumber & Supply Co.*, 214 B.R. at 444 (court's function is "not to determine the ultimate merits of the underlying matter"). Put another way,

> a bankruptcy court need not conduct an independent investigation in formulating its opinion as to the reasonableness of a settlement. The Court can give weight to the Trustee's informed judgment that a compromise is fair and equitable. The Court can also give weight to the competency and experience of counsel who support the settlement.

*In re Drexel Burnham Lambert Group*, 134 B.R. 493, 496 (Bankr.S.D.N.Y.1991)

(internal citations omitted). However, "[a] bankruptcy judge may not simply accept a trustee's word that the settlement is reasonable, nor may he rubber stamp a trustee's proposal." *In re Ionosphere Clubs, Inc., supra*, 156 B.R. at 426.

■ In applying that standard to the instant dispute it is apparent that the proposed settlement substantially exceeds the "lowest point in the range of reasonableness." The law of this case is that Raytech and Raymark share a common creditor body. *See Order Denying Motion for Substantive Consolidation. See also, Tape of April 11* at 4:16. That conclusion is buttressed by the inter-debtor proofs of claim filed in these cases. If the motion to approve the settlement is granted, Raytech will be able to promptly consummate its confirmed plan of reorganization and maintain its listing on the New York Stock Exchange. In addition, it will be able to implement the trust pursuant to 11 U.S.C. § 524(g) and begin making distributions to its asbestos and other creditors. The settlement preserves potential assets for Raymark's creditors in *Ryan v. Smith* and other litigation, which have a tangible although perhaps unquantifiable benefit to Raytech. *See Tape of April 11* at 4:02.

Conversely, if the motion is denied, there will be protracted litigation of duplicative claims, with a concomitant increased administrative expense to the Raytech and Raymark estates and corresponding reduction in distribution to other creditors. If the cost of the professional fees in the Raytech case, which thus far have exceeded $20 million, is any guide, future administrative expenses are likely to be substantial. Rejection of the settlement arguably will expose Raytech to the unlimited liability contemplated by the 1998 backstop agreement, which the Raymark trustee

contends is still in effect without a cap.[5] It is therefore reasonable to anticipate that the Raymark trustee would, in the absence of the instant proposed settlement, commence litigation seeking to enforce the 1998 backstop arrangement, and that Raytech would defend that action. The cost of prosecuting and defending of such an action would further diminish the estates' assets.

Accordingly, it is concluded that the proposed settlement is fundamentally fair. It is worthy of note that that conclusion is supported by the creditors' committee and the governments, who represent the vast majority of the creditor body. The objections are OVERRULED, the motion to approve the settlement is GRANTED, and

IT IS SO ORDERED.

## APPENDIX

### *TERM SHEET FOR RESOLUTION OF RAYTECH AND RAYMARK CLAIMS*

The following term sheet provides for the resolution of all claims asserted by (i) Raytech Corporation ("Raytech") against the Chapter 11 estates of Raymark Corporation and Raymark Industries, Inc. (collectively, "Raymark") and (ii) Laureen Ryan, the Chapter 11 Trustee of Raymark (the "Trustee"), against the Chapter 11 estate of Raytech. It also provides for a means for continued funding of Raymark's reorganization efforts. The terms of settlement provided herein shall be incorporated into a joint application of Raytech and the Trustee, to be filed in their respective Chapter 11 proceedings, for approval of the settlement pursuant to Bankruptcy Rule 9019 (the "Settlement").

Terms of Settlement:

1. Withdrawal and/or Release of Claims

a. Withdrawal/Release of Raytech Claims:

Upon approval of the Settlement by final order of the Bankruptcy Court, Raytech shall be deemed to have withdrawn and released all claims asserted or capable of assertion against Raymark, including, but not limited to, any claims asserted in the unliquidated proof of claim filed by Raytech in the Raymark Chapter 11 cases and any claims, administrative or otherwise, that Raytech may have as a result of the funding of the *Ryan v. Smith* litigation or other post-petition actions undertaken in the Raymark Chapter 11 cases through the date of such final order; Provided, however, that this release shall not apply to rights and obligations established under or expressly preserved by this agreement.

b. Withdrawal/Release of Raymark Claims:

Upon approval of the Settlement by final order of the Bankruptcy Court, the Trustee shall be deemed to have withdrawn and released all claims asserted or capable of assertion against Raytech, including, but not limited to, all claims asserted in the proofs of claim filed by the Trustee in the Raytech Chapter 11 case; Provided, however, that this release shall not apply to rights and obligations established under or expressly preserved by this agreement.

---

**5.** According to the trial testimony, Raytech's bankruptcy attorneys apparently believe that the 1998 backstop order was superceded by the Plan which did not address that order, while Raytech's general counsel and the Raymark trustee believe that that order is still in effect.

2. Consideration For Withdrawal/Release of Claims

a. Consideration to Raymark: In consideration of its agreement to withdraw and release all of its claims against Raytech,

Raytech agrees to be responsible for, and to pay when due all fees and expenses, on a going-forward basis, incurred by Caplin & Drysdale and Stroock, Stroock & Lavan in connection with *Ryan v. Smith* and related litigation. This provision shall be without prejudice to Raytech's right to seek reimbursement of said fees from the Raymark estates as a "substantial contribution" to the Raymark estates.

In further consideration of its agreement to withdraw and release all of its claims against Raytech, the Trustee and the Raymark estates shall receive a continuing "backstop" or guaranty (the "Backstop") from Raytech of timely payment of the Court approved or allowable fees and expenses of FTI/Kahn; Anderson, Kill; P & H; the UK Professionals; Orrick, Harrington; any professionals subsequently retained by the Trustee as replacements thereof; and the Trustee in the Raymark bankruptcy cases for all trustee commissions, fees and/or compensation allowed under 11 U.S.C. Section 326 or pursuant to the terms of any plan of reorganization confirmed in the Raymark Cases (the "Backstopped Claims"), including but not limited to Court-awarded professional fees and all trustee commissions; Provided, however, that Raytech's payment obligations under the Backstop shall (i) take effect only if and when insufficient assets exist in the Raymark estates to timely and fully pay such Backstopped Claims and (ii) shall be limited to a maximum, unreimbursed amount of $1,000,000. Raytech's payments under such Backstop shall be made as promptly as is in good faith possible, but in no event later than thirty (30) days, after presentation to Raytech of: (i) a copy of the signed Bankruptcy Court order allowing such Backstopped Claim(s), and (ii) Trustee's certification of the extent to which funds are not currently available in the Raymark estates to pay such Backstopped Claim(s); Provided further, however, that Raytech's payment of Backstopped Claims, if called upon, shall be reimbursed from unencumbered estate assets of Raymark, if any, if and when such assets become available for distribution.

In addition, Raytech agrees to keep in place its agreement respecting funding of the UK Professionals; to wit, that Raytech shall be responsible for, and shall pay, 50% of all fees and expenses incurred by the UK Professionals. This provision shall be without prejudice to Raytech's right to seek reimbursement of such UK Professionals' fees as are incurred after the date of entry of the order approving this settlement from the Raymark estates as a "substantial contribution" to the Raymark estates.

b. Consideration to Raytech:

In consideration of Raytech's agreement to withdraw all of its claims against the Raymark estates and Raytech's agreement to provide the continuing "Backstop" of the cost and expenses detailed in paragraph 2.a. above, Raymark shall be required to exercise its best efforts to (i) minimize, to the extent reasonably possible, the Backstopped Claims, and (ii) satisfy the Backstopped Claims from sources other than the Backstop, including but not limited to insurance coverage which may be available to Raymark.

3. Continued Monitoring of Raymark Estates/ Backstop Accounting:

Notwithstanding its agreement to withdraw all claims against Raymark, Raytech and Raytech's Creditors' Committee shall be entitled to continue to engage in bud-

geting and monitoring oversight of the Raymark estates and shall be designated as a party-in-interest for the purpose of objecting to applications for the payment of any administrative expenses and/or other priority claims in the Raymark cases.

In addition, Raymark and Raytech shall periodically account to each other and reconcile their accountings with respect to the operation of the backstop.

For Raytech Corporation: /s/ *LeGrande Young* 3/13/01

For Trustee: /s/ *Laureen Ryan* 3/13/01 [1]

### ADDENDUM TO TERM SHEET

### *(CLARIFYING CLAIMS BEING WITH-DRAWN AND RESERVATIONS OF RIGHTS)*

The following Addendum supplements and clarifies that certain Term Sheet (the "Term Sheet"), dated as of March 13, 2001, providing for the resolution of all claims asserted by (i) Raytech Corporation ("Raytech") against the Chapter 11 estates of Raymark Corporation and Raymark Industries, Inc. (collectively, "Raymark") and (ii) Laureen Ryan, the Chapter 11 Trustee of Raymark (the "Trustee"), against the Chapter 11 estate of Raytech, and further providing for a means for continued funding of Raymark's reorganization efforts:

A. The following claims are being relinquished, except as qualified herein or in the Term Sheet, in connection with the proposed Raymark/Raytech settlement

I. *Claims Being Relinquished by Raymark:*

1. Raymark's proof of claim for contribution or indemnification for envi-ronmental remediation, in an amount not less than $16 million.

2. Raymark's proof of claim for contribution for asbestos personal injury liability, in an unliquidated amount.

3. Raymark's proof of claim for contribution pension liability, in an amount estimated at $20,631,268.

4. Raymark's proof of claim for contribution for retiree health, welfare and similar benefits, in an amount estimated at $10–$12 million.

5. Raymark's putative claim, however characterized, to a continuing contractual backstop from Raytech of certain expenses incurred by Raymark, unlimited as to amount, as authorized by Bankruptcy Court order of December 1998.

6. Raymark's proof of claim pursuant to a certain promissory note dated February 1, 1997 in the original principal amount of $33,694,454.49. The relinquishment by Raymark of this claim shall, however, exclude such amount as is equal to Raytech's liability, if any, for environmental remediation at Crawfordsville, Indiana, but only to the extent that such liability is subject to the contractual indemnity provided by Raymark to Raytech (and/or its affiliates) in connection with the Asset Purchase Agreement giving rise to the obligations reflected by the promissory note. This remaining claim shall in all events be subordinated to the claims of all other creditors of Raytech.

7. Raymark's putative contribution claim against Raytech in conjunction

---

1. It is noted that each actually signed the Term Sheet on April 11, 2001. *Compare,*

*March 13, 2001 Motion.*

with any recovery in *Ryan v. Smith.* Raytech and Raymark shall expressly retain their respective claims against one another for contribution arising with respect to recoveries from any of the defendants in *Ryan v. Smith,* but only to the extent that there are such recoveries (*i.e.,* recourse for such claims shall be limited to recoveries in *Ryan v. Smith*). These retained claims shall in all events be subordinated to the claims of all other creditors in each of the respective estates and for purposes of the distributions to be made under Raytech's Second Amended Plan of Reorganization, Raymark's retained claims shall be estimated at $0.

II. *Claims Being Relinquished by Raytech*

1. Raytech's proof of claim against Raymark Corporation based upon "theories of common law and/or contractual contribution and indemnification," in an unliquidated amount except that Raytech shall expressly retain its claim under the provisions of the Asset Purchase Agreement to indemnification from Raymark for Raytech's liability for environmental remediation at Crawfordsville, Indiana, provided, however, that such claim, and Raytech's recourse for such claim, shall be limited only to the amount, if any, recovered from Federal Insurance Company (and/or its affiliates) on account of policies issued to Raymark insuring such liability. This remaining claim shall in all events be subordinated to the claims of all other creditors of Raymark.

2. Raytech's proof of claim against Raymark Industries, Inc. based upon "theories of common law and/or contractual contribution and indemnification," in an unliquidated amount, except that Raytech shall expressly retain its claim under the provisions of the Asset Purchase Agreement to indemnification from Raymark for Raytech's liability for environmental remediation at Crawfordsville, Indiana, provided, however, that such claim, and Raytech's recourse for such claim, shall be limited only to the amount, if any, recovered from Federal Insurance Company (and/or its affiliates) on account of policies issued to Raymark insuring such liability. This remaining claim shall in all events be subordinated to the claims of all other creditors of Raymark.

3. Raytech's putative claim, however characterized, for amounts expended from the date of Raymark's bankruptcy filing to the date of this settlement in connection with the *Ryan v. Smith* matter, any matters relating to the conduct of Raymark's former management, and any amounts paid to the professionals Caplin & Drysdale, Stroock Stroock & Lavan, or the U.K. professionals.

4. Raytech's putative contribution claim against Raymark in conjunction with any recovery in *Ryan v. Smith.* Raytech and Raymark shall expressly retain their respective claims against one another for contribution arising with respect to recoveries from any of the defendants in *Ryan v. Smith,* but only to the extent that there are such recoveries (i.e., recourse for such claims shall be limited to recoveries in Ryan v. Smith). These retained claims shall

in all events be subordinated to the claims of all other creditors in each of the respective estates.

B. The Raymark Trustee and Raytech mutually represent that they are currently aware of no other claims that the Raymark Estates and Raytech have or may have each against the other.

For Raytech Corporation: /s/ *LeGrande Young* 4/10/01

For Trustee: /s/ *Laureen Ryan* 4/10/01 [2]

---

**2.** It is noted that each actually signed the Addendum on April 11, 2001.